758 So.2d 667 (2000)
Leo SALTERS, Petitioner,
v.
STATE of Florida, Respondent.
No. SC95663.
Supreme Court of Florida.
May 11, 2000.
Richard L. Jorandby, Public Defender, and Marcy K. Allen, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida, for Petitioner.
Robert A. Butterworth, Attorney General, Celia Terenzio, Bureau Chief, and Gentry Denise Benjamin, Assistant Attorney General, West Palm Beach, Florida, for Respondent.
PER CURIAM.
We have for review Salters v. State, 731 So.2d 826 (Fla. 4th DCA 1999), in which the Fourth District Court of Appeal certified conflict with the Second District Court of Appeal's decision in Thompson v. State, 708 So.2d 315 (Fla. 2d DCA 1998), approved, 750 So.2d 643 (Fla.1999), regarding the class of persons having standing to challenge a violent career criminal sentence on the basis that chapter 95-182, Laws of Florida, violates the single subject rule contained in article III, section 6 of the Florida Constitution. We have jurisdiction. See Art. V, § 3(b)(4), Fla. Const. As explained in more detail below, we quash that portion of the decision below that affirmed Salters' violent career criminal sentence.

*668 I. FACTS AND PROCEDURAL HISTORY IN THIS CASE
On May 15, 1997, the State of Florida (the State) filed an information charging Leo Salters (Salters)[1] with strong-arm robbery in connection with the removal of eight bottles of Pepto-Bismol from a Winn Dixie Store, with such offense occurring on April 27, 1997. Salters' case proceeded to trial in July 1997, and the jury found him guilty as charged.[2] The trial court adjudicated Salters guilty and deferred sentencing to a later date.
Prior to sentencing, the State filed a request that the trial court, pursuant to section 775.084, Florida Statutes (Supp. 1996), declare Salters to be a habitual felony offender, a habitual violent felony offender, or a violent career criminal. According to the guidelines scoresheet prepared in Salters' case, the sentencing range for the offense would have been from twenty-seven to forty-five months in prison. However, after conducting a sentencing hearing on August 15, 1997, the trial court sentenced Salters as a violent career criminal to thirty-five years in prison with a thirty-year mandatory minimum term pursuant to section 775.084(c), Florida Statutes (Supp.1996).[3] Salters filed a timely motion to correct sentencing error pursuant to rule 3.800(b) of the Florida Rule of Criminal Procedure (1997), arguing that the State had failed to prove that Salters qualified to be sentenced as a violent career criminal, but the trial court denied that motion. Salters appealed.
On appeal, the Fourth District affirmed Salters' conviction for strong-arm robbery. See Salters, 731 So.2d at 826. The Fourth District also affirmed Salters' violent career criminal sentence, stating, "We hold that appellant's opportunity to challenge his sentence, based upon the constitutionality of the statute, ended on October 1, 1996. Consequently, appellant lacked standing to challenge this issue, since his offenses occurred on April 27, 1997." Id. (citing State v. Johnson, 616 So.2d 1, 2 (Fla.1993), and Scott v. State, 721 So.2d 1245 (Fla. 4th DCA 1998)).[4] In *669 so holding, the Fourth District certified conflict with the Second District's decision in Thompson regarding the close of the window period, and that certified conflict is now before us for consideration.[5]

II. WINDOW PERIOD ANALYSIS
In State v. Thompson, 750 So.2d 643, 649 (Fla.1999), we held chapter 95-182, Laws of Florida, to be unconstitutional as violative of the single subject rule contained in article III, section 6 of the Florida Constitution. Prior to announcing that holding, however, we noted the conflict between the Second District's decision in Thompson and the Fourth District's decision in Salters as to when the window period closed for persons claiming a violent career criminal sentence to be invalid due to the amendments made by chapter 95-182. See Thompson, 750 So.2d at 646. As noted in Thompson, see id., the Salters court apparently accepted an argument discussed by the Fourth District in Scott, in which the State argued that the Legislature's enactment of chapter 96-388, Laws of Florida, portions of which became effective on October 1, 1996, cured any alleged single subject rule problems in chapter 95-182. See Scott, 721 So.2d at 1246 n. 1. We declined to make a determination in Thompson regarding the close of the window period because the defendant in that case had standing to raise a single subject rule challenge even if the window period closed on October 1, 1996, as determined by the Fourth District in Salters. See Thompson, 750 So.2d at 646. It is clear in this case, however, that Salters would not have standing to challenge chapter 95-182 on single subject rule grounds if the window period for raising such a challenge closed on October 1, 1996, and we therefore must determine the window period issue here. In determining this issue, we consider this Court's prior decisions in the single subject rule context, the contents of chapter 96-388, Laws of Florida, as well as the arguments asserted by the parties in Thompson[6] and this case.
In Loxahatchee River Environmental Control District v. School Board of Palm Beach County, 515 So.2d 217 (Fla. 1987), this Court explained how laws that violate the single subject rule generally are "cured":
At every odd-year regular session, the legislature, as part of its program of continuing revision, adopts the laws passed in the preceding odd year as official statute laws and directs that they take effect immediately under the title of "Florida Statutes" dated the current year. In Santos v. State, 380 So.2d 1284 (Fla.1980), this Court held that when laws passed by the legislature are adopted and codified in this manner, the restrictions of article III, section 6, pertaining to one subject matter and notice in the title no longer apply. Accord *670 State v. Combs, 388 So.2d 1029 (Fla. 1980)....
. . . .
... A law passed in violation of the requirements of article III, section 6, is invalid until such time as it is reenacted for codification into the Florida Statutes. See Thompson v. Intercounty Tel. & Tel. Co., 62 So.2d 16 (Fla.1952).
Loxahatchee, 515 So.2d at 218-19 (emphasis added) (footnote omitted); see also Johnson, 616 So.2d at 2. The Preface to the official Florida Statutes illustrates how the biennial adoption process works. Linda S. Jessen, Preface to Florida Statutes at vi (1999); see also Loxahatchee, 515 So.2d at 218 n. *. In essence, the Preface explains that, during the biennial adoption process, the Legislature amends sections 11.2421, 11.2422, 11.2424, and 11.2425, Florida Statutes, to prospectively adopt as the official statutory law of Florida those portions of the statutes that are carried forward from the preceding regular edition of the Florida Statutes. Thus, it is clear that the general rule for "curing" laws that violate the single subject rule is through the biennial adoption process.
Without discussing the general rule, this Court essentially recognized an exception to that rule in Martinez v. Scanlan, 582 So.2d 1167 (Fla.1991). In that case, the trial court held unconstitutional chapter 90-201, Laws of Florida, as violative of the single subject rule. See id. at 1169. Subsequent to the trial court's ruling but prior to this Court's decision, the Legislature convened a special session during which it (1) separated into two distinct bills the international trade and workers' compensation provisions contained in chapter 90-201; and (2) reenacted those two distinct bills into law. See id. at 1172 (citing the passage of chapters 91-1 and 91-5, Laws of Florida). On review, this Court agreed with the trial court that chapter 90-201 violated the single subject rule because "the subjects of workers' compensation and international trade are simply too dissimilar and lack the necessary logical and rational relationship to the legislature's stated purpose of comprehensive economic development to pass constitutional muster." Id. This Court also found, however, that the Legislature's separation and reenactment of the dissimilar provisions originally contained in chapter 90-201 "clearly cured the single subject objection and demonstrated the legislature's intent to amend the preexisting workers' compensation act without the appendage of the international trade legislation." Id. Thus, this Court clearly recognized in Scanlan that a single subject rule violative chapter law may be cured by means other than the biennial adoption process.
With the above exception in mind, we must determine whether the general rule or the exception applies in this case. The State asserts that the Legislature's passage of chapter 96-388 has the same effect in this case as did the Legislature's curative actions in Scanlan, while Salters argues that the Legislature's actions in Scanlan and this case are distinguishable. After reviewing the contents of chapter 96-388, we agree with Salters regarding the violent career criminal sentencing provisions addressed in chapter 96-388.
In sections 44, 45, and 46 of chapter 96-388, the Legislature addressed several statutory provisions that previously were addressed in chapter 95-182; specifically, sections 775.084, 775.0842, and 790.235, Florida Statutes. Compare Ch. 95-182, §§ 2, 5, 7, at 1667-73, with Ch. 96-388, §§ 44-46, at 2330-37.[7] In section 44 of chapter 96-388, the Legislature amended section 775.084, Florida Statutes, by (1) adding language to provide that a defendant *671 qualifies for enhanced sentencing if the offense at issue was committed "[w]hile the defendant was serving a prison sentence or other commitment imposed as a result of a prior conviction of [a qualifying] felony;" (2) deleting several references to the term "on parole or otherwise;" (3) deleting gender-specific language; (4) revising language relating to enhanced sentencing procedures; and (5) revising language regarding gain-time eligibility. See Ch. 96-388, § 44, at 2330-36. Also in section 44 of chapter 96-388, the Legislature reenacted subsection (6) of section 775.084, which states: "The purpose of this section is to provide uniform punishment for those crimes made punishable under this section, and to this end, a reference to this section constitutes a general reference under the doctrine of incorporation by reference." In section 45 of chapter 96-388, the Legislature reenacted section 790.235, Florida Statutes, which is the statutory section establishing the crime of unlawful possession of a firearm by a violent career criminal. See Ch. 96-388, § 45, at 2336. Finally, in section 46 of chapter 96-388, the Legislature amended section 775.0842, Florida Statutes, by deleting the word "or" from the statute in one instance. See Ch. 96-388, § 46, at 2337.[8]
After considering the relevant provisions of chapter 96-388 in light of the general rule and exception discussed above, we hold that the window period for challenging the violent career criminal sentencing provisions created by chapter 95-182, Laws of Florida, opened on October 1, 1995, when chapter 95-182 became effective, and closed on May 24, 1997, when chapter 97-97, Laws of Florida, reenacted the amendments contained in chapter 95-182 as part of the biennial adoption process. Stated another way, we hold that individuals such as Salters who are challenging the violent career criminal sentencing provisions enacted by chapter 95-182 have standing to do so if the relevant criminal offense or offenses occurred on or after October 1, 1995, and before May 24, 1997.[9] We reach this holding because other than reenacting the "general purpose" provision contained in section 775.084(6), Florida Statutes, the Legislature's passage of the relevant provisions of chapter 96-388 only amended various enhanced sentencing provisions contained in sections 775.084 and 775.0842. Unlike the situation in Scanlan, the Legislature here did not cure the single subject problems implicated in chapter 95-182 by separating the dissimilar provisions and reenacting those provisions into law separately. Based on this analysis and determination, we do not address Salters' argument that chapter 96-388, Laws of Florida, itself violates the single subject rule.
Accordingly, based on the foregoing, we quash that part of the decision below that affirmed Salters' sentence and approve the result reached by the Second District in Thompson regarding the applicable window *672 period. Further, we reverse Salters' violent career criminal sentence and remand for resentencing in accordance with the valid laws in effect on April 27, 1997, the date on which Salters committed the underlying offense in this case. See Thompson, 750 So.2d at 649 (remanding for resentencing in accordance with the valid laws in effect at the time the defendant committed her offenses).
It is so ordered.
HARDING, C.J., and SHAW, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
WELLS, J., dissents with an opinion.
WELLS, J., dissenting.
For the reasons stated in my dissent in State v. Thompson, 750 So.2d 643 (Fla. 1999). I dissent from the majority decision in this case. I do not reach the window issue.
NOTES
[1] The name listed on the information was actually Willie Kyles, which is an alias name used by Leo Salters. The trial court later granted the State's oral motion to amend the information to reflect Salters' true name.
[2] The evidence presented at trial showed that Esaak Mohamed, an assistant manager at a Winn Dixie store, observed Salters exiting that store with a protruding bulge in the back of his windbreaker jacket. Mohamed followed Salters outside the store, and when he spoke to Salters, Salters began to run. Mohamed chased Salters, and Mohamed was injured during the chase when Salters thrust a bicycle into Mohamed's path. A Winn Dixie customer apprehended Salters soon thereafter, at which time Salters stated that he had stolen from the store. The police recovered eight bottles of Pepto-Bismol from Salters' person. After considering these facts, the jury found Salters guilty of strong-arm robbery as charged, rejecting the lesser included offenses of resisting a merchant and petit theft.
[3] In a written order, the trial court detailed Salters' relevant criminal record:

On November 7, 1985, the Defendant was convicted of Uttering a Forged Instrument and placed on probation. On January 30, 1987, the probation was revoked, and the Defendant was also convicted of Burglary, and he was sentenced to eighteen (18) months in prison. On February 1, 1991, the Defendant was convicted of Robbery and sentenced to two (2) years in prison. On January 16, 1996, the Defendant was convicted of Burglary and sentenced to time served. On April 2, 1997, the Defendant was convicted of Burglary, and he was placed on supervision. On May 28, 1997, that supervision was revoked, and he was sentenced to two (2) years in prison....
Based on Salters' criminal record, the trial court found it necessary for the protection of the public to sentence Salters as a violent career criminal.
[4] Even though Salters failed to challenge chapter 95-182 on single subject rule grounds in the trial court, we find that such challenge may be properly addressed in this case for the first time on appeal. Cf. Heggs v. State, 759 So.2d 620, 623, 624 n. 4 (Fla.2000); Nelson v. State, 748 So.2d 237, 241-42 (Fla.1999), cert. denied, ___ U.S. ___, 120 S.Ct. 950, 145 L.Ed.2d 825 (2000); State v. Johnson, 616 So.2d 1, 3-4 (Fla.1993). However, for those defendants who have available the procedural mechanism of our recently amended rule 3.800(b), see Amendments to Rules of Criminal Procedure 3.111(e) & 3.800 & Rules of Appellate Procedure 9.010(h), 9.140, & 9.600, 24 Fla. L. Weekly S530, ___ So.2d ___, 1999 WL 1029285 (Fla. Nov.12, 1999), we would require that such defendants in the future raise a single subject rule challenge in the trial court prior to filing the first appellate brief. See Maddox v. State, 760 So.2d 89, 98 (Fla. 2000).
[5] Salters makes the following three additional claims in an attempt to challenge his strong arm robbery conviction: (1) the evidence was insufficient to support the conviction; (2) the trial court erroneously allowed the State to exercise peremptory challenges in a racially discriminatory manner; and (3) the trial court erroneously denied various defense motions for mistrial. These additional claims are clearly outside the scope of the certified conflict issue, and we decline to address them. See e.g., Ross v. State, 601 So.2d 1190, 1193 (Fla.1992).
[6] We received supplemental briefs from the parties in Thompson regarding the window period issue, see State v. Thompson, 750 So.2d 643, 646 (Fla.1999), and we granted Salters' "Request to Take Judicial Notice" of those supplemental briefs in this case.
[7] As noted in State v. Thompson, 750 So.2d 643, 647 (Fla.1999), in section 2 of chapter 95-182, the Legislature substantially amended section 775.084, Florida Statutes, by (1) creating and defining a new "violent career criminal" sentencing category; (2) adding "aggravated stalking" to the list of qualifying offenses for the habitual violent felony offender sentencing category; (3) establishing sentencing procedures for violent career criminals and modifying the sentencing procedures for habitual felony and habitual violent felony offenders; and (4) limiting the amount and types of gain-time for which violent career criminals are eligible. In section 5 of chapter 95-182, the Legislature added the phrase "or a violent career criminal" to section 775.0842, Florida Statutes, the statute establishing which persons that are subject to career criminal prosecution. See Ch. 95-182, § 5 at 1671; see also Thompson, 750 So.2d at 647. Finally, in section 7 of chapter 95-182, the Legislature created section 790.235, Florida Statutes, which sets forth the substantive crime of unlawful possession of a firearm by a violent career criminal. See Ch. 95-182, § 7, at 1673; see also Thompson, 750 So.2d at 647.
[8] Because section 46 of chapter 96-388 did not specifically provide an effective date, see chapter 96-388, section 46, at 2337, the amendment to section 775.0842, Florida Statutes, made by that section actually became effective on July 1, 1996. See Ch. 96-388, § 74, at 2384 ("Except as otherwise provided herein, this act shall take effect July 1, 1996."). It is clear, however, that the Legislature's deletion of the word "or" in one instance had no substantive effect on the statute.
[9] Because the offense of possession of a firearm by a violent career criminal is not involved here, we do not determine when the window period closed for persons attempting to challenge a conviction for such offense by raising a single subject rule challenge to chapter 95-182, Laws of Florida.