818 So.2d 544 (2002)
Rebecca TAYLOR, Appellant,
v.
STATE of Florida, Appellee.
No. 2D01-1751.
District Court of Appeal of Florida, Second District.
January 23, 2002.
Rehearing Denied April 23, 2002.
*546 James Marion Moorman, Public Defender, and Allyn M. Giambalvo, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Susan D. Dunlevy, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Judge.
On May 9, 2000, Rebecca Taylor trafficked in 14 or more but less than 28 grams of methamphetamine, violating section 893.135(1)(f)(1)(a), Florida Statutes (1999). She was charged with the crime, and in January 2001 she entered an open plea of no contest. At her sentencing hearing, she argued that the court should not impose a three-year minimum mandatory prison term because chapter 99-188, Laws of Florida, which amended section 893.135 to impose that penalty for her crime, violated the single subject rule contained in Florida's constitution. The circuit court rejected Taylor's assertion and sentenced her to forty months' imprisonment, including the minimum mandatory term. On appeal Taylor again challenges her sentence by attacking the constitutionality of chapter 99-188.[1] We agree that this law violated the single subject rule, and we reverse Taylor's sentence.
The single subject rule provides, in pertinent part, that "[e]very law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title." Art. III, § 6, Fla. Const. In State v. Thompson, 750 So.2d 643 (Fla.1999), our supreme court reiterated the three purposes of the rule:
(1) to prevent hodge podge or "log rolling" legislation, i.e., putting two unrelated matters in one act; (2) to prevent surprise or fraud by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and (3) to fairly apprise the people of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon.
Id. at 646 (quoting State ex rel. Flink v. Canova, 94 So.2d 181, 184 (Fla.1957)). The Thompson court also quoted its previous decision in State v. Lee, 356 So.2d 276 (Fla.1978), to the effect that the single subject rule is designed "to prevent `logrolling' where a single enactment becomes a cloak for dissimilar legislation having no necessary or appropriate connection with the subject matter." Thompson, 750 So.2d at 646-47.
Chapter 99-188 has thirteen sections, the first of which provides that the act may be cited as the "Three Strikes Violent Felony Offender Act." In fact, only sections 3 and 6 actually relate to "three strikes" provisions: section 3 amends section 775.084, Florida Statutes (Supp.1998), to define a "three-time violent felony offender" and to impose minimum mandatory prison terms for felons sentenced as such; section 6 changes a reference to section 775.084 in section 790.235, Florida Statutes (1997), to conform to the "three-strikes" amendment. Ch. 99-188, § 1, at 1040; § 3, at 1042-50; § 6, at 1051-52, Laws of Fla.
Most of the remaining sections address sentences, primarily those to be imposed on violent or repeat felony offenders. Section 2 amends the prison releasee reoffender portion of section 775.082, Florida Statutes (Supp.1998); section 4 amends *547 section 784.07, Florida Statutes (Supp. 1998), to add minimum mandatory terms for assault and battery on certain public employees; section 5 adds a minimum mandatory term for a conviction of assault or battery on a person sixty-five years of age or older under section 784.08, Florida Statutes (1997); section 9, which affected Taylor's sentence, amends section 893.135, Florida Statutes (1997), to require minimum mandatory sentences for trafficking in certain amounts of illegal drugs; section 10 conforms numerous statutes to the amendment made in section 9 of the act; and section 12 requires the governor to place announcements in local media explaining the penalties provided in the act. Ch. 99-188, § 2, at 1040-42; § 4, at 1050-51; § 5, at 1051; § 9, at 1056-62; § 10, at 1062-81; § 12, at 1081, Laws of Fla.
Three sections in the act involve substantive criminal provisions. Section 7 creates the new offense of repeat sexual batterer, section 794.0115, Florida Statutes (1999), and section 8 amends section 794.011, Florida Statutes (1997), to conform to the new crime created in section 7. Section 13 amends the definition of a conveyance in the burglary statute, section 810.011, Florida Statutes (1997). Ch. 99-188, § 7, at 1052-53; § 8, at 1053-56; § 13, at 1081, Laws of Fla.
Finally, section 11 amends section 943.0535, Florida Statutes (1997), concerning the administrative duty of the clerk of court to provide criminal records to United States immigration officers. Ch. 99-188, § 11, at 1081, Laws of Fla.
Our task is to decide whether these thirteen provisions address a single subject as required by the constitution. We recognize that "[t]he subject of an act `may be as broad as the legislature chooses as long as the matters included in the act have a natural or logical connection.'" Chenoweth v. Kemp, 396 So.2d 1122, 1124 (Fla.1981) (quoting Bd. of Pub. Instruction v. Doran, 224 So.2d 693, 699 (Fla.1969)), receded from on other grounds, Sheffield v. Superior Ins. Co., 800 So.2d 197 (Fla. 2001). When searching for the natural or logical connection between an act's provisions, courts often look to its preamble, in which the legislature may have identified a crisis or stated a broad purpose that ties the sections together. See Burch v. State, 558 So.2d 1, 2-3 (Fla.1990) (holding that even though chapter 87-243, Laws of Florida, addressed three separate areascriminal regulations and procedures, money laundering, and safe neighborhoodsit did not violate the single subject rule because the preamble identified a general crisis resulting from a rapidly increasing crime rate that reached beyond the criminal justice system to cause deterioration of businesses, schools, communities, and families); Smith v. Dep't of Ins., 507 So.2d 1080 (Fla.1987) (explaining that chapter 86-160, Laws of Florida, did not violate the single subject rule because the legislature identified a crisis in the insurance industry, to which the tort system contributed, thus provisions addressing insurance regulation and tort reform were properly contained in the same act).
Chapter 99-188 contains a lengthy preamble[2] that evinces the legislators' *548 concern with the crime rate in Florida and the fact that felons, particularly violent and repeat offenders, are not being sentenced to the maximum prison terms allowed under Florida law. Unlike the preamble to the legislation in Burch, this one does not identify a crisis involving the general crime rate. If any crisis can be inferred, it concerns sentencing. Indeed, most of the sections in this act address sentencing and impose minimum mandatory terms. See ch. 99-188, §§ 2, 3, 4, 5, 9. *549 The sections do not all concern both violent and repeat offenders, as implied in section 1, but they clearly deal with one subject and are logically connected. Further, although section 7 is not strictly a sentencing provision, it does create an offense involving repeat crimes of violence, punishable by a minimum mandatory prison term. Additionally, sections 6, 8, 10, and 12 merely implement the changes made in the act. We have no difficulty finding that these mentioned sections address a single subject because they are naturally and logically related to each other and to the legislatively stated purpose of the act.
In contrast, section 13 is not naturally or logically connected to the act's other sections. It is not a sentencing provision, nor is it concerned with violent or repeat offenders. Rather, it simply amends the definition of a "conveyance" for purposes of the burglary statute to include a "railroad vehicle" as well as a railroad car. This slight expansion of a substantive criminal offense has only an attenuated relationship to sentencing or to the other sections of the act, in that it might be argued that under the broader definition of a conveyance more felons could be convicted of "armed burglary," one of the qualifying crimes for three-strikes sentencing. See ch. 99-188, § 3. But that relationship is so tenuous, so dependent on the happenstance of individual cases, that it simply cannot be characterized as natural or logical.
Moreover, the legislative history of the act reveals that the amendment to the conveyance definition occurred under circumstances that often lead to problems with the single subject rule. The bill that was eventually enacted as chapter 99-188 began in March 1999 as House Bill 121. It essentially contained what became sections 2 through 7 of the act. Fla. H.R. Jour. 27-28 (Reg.Sess.1999). After making several amendments on April 23, 1999, the House passed Committee Substitute for House Bill 121 on April 26, 1999. Id. at 1128-29, 1403. At that point, the bill contained all the sections in the present act, other than section 13. The House bill then met the Committee Substitute for Senate Bill 1746, which also contained all the sections in the present act other than the amendment to the burglary statute. The bill was referred to the Committee on Fiscal Policy, which recommended the amendment that became section 13 of the act. Fla. S. Jour. 351, 364-65 (Reg.Sess.1999). The bill, as amended, passed the Senate on April 28, 1999. Id. at 1276-92. Thus, it appears the addition of section 13 was an afterthought. This is exactly the type of "log rolling" legislation that the single subject rule was intended to prevent. The inclusion of section 13 in chapter 99-188 violated the single subject rule and rendered the entire chapter unconstitutional.
If anything, section 11 bears even less relationship to the act's other provisions. Chapter 99-188 is a criminal law aimed primarily at imposing harsher sentences on violent felons, repeat felony offenders, and drug traffickers. However, section 11 addresses a purely administrative subject that is far afield of the act's other provisions. This section amends section 943.0535, which requires the court clerk to provide documents concerning an alien's felony or misdemeanor convictions to immigration officers.
The inclusion of this noncriminal provision in a criminal sentencing enactment is analogous to the situation in Bunnell v. State, 453 So.2d 808 (Fla.1984), where the court held that legislation containing similarly unrelated provisions violated the single subject rule. The Bunnell court analyzed chapter 82-150, Laws of Florida, which created the crime of obstruction by *550 false information in section 1, and amended statutes relating to the Florida Council on Criminal Justice in sections 2 and 3. The court noted that "the object of section 1 is separate and disassociated from the object of sections 2 and 3." 453 So.2d at 809. The statutes concerning the Florida Council on Criminal Justice essentially described the council and set forth the council's duties. See § 23.15, .151, .152, .154,.155, Fla. Stat. (1981). Likewise, section 943.0535 describes a duty of court clerks. While the statutory duties of both of the bodies relate to crimes or criminal activities, the statutes do not create crimes or prescribe their punishments. As in other cases involving the combination of civil and criminal subjects in one act, the inclusion of section 11 in chapter 99-188 violates the single subject rule. See Thompson, 750 So.2d at 647-48; State v. Johnson, 616 So.2d 1, 4 (Fla.1993); Bunnell, 453 So.2d at 809. For this reason, the entire chapter is unconstitutional.
Having discerned that chapter 99-188 is unconstitutional, we must determine the window period for asserting a single subject challenge. The act became effective on July 1, 1999, so the window period opened on that date. As we will explain, it has not yet closed.
Generally, the window period for challenging a statute based on a single subject violation closes on the effective date of the legislature's biennial reenactment of the statutes affected by the legislation, which is deemed to cure single subject defects. See, e.g., Salters v. State, 758 So.2d 667, 671 (Fla.2000) (holding that window period for challenging chapter 95-182, Laws of Florida, opened when the chapter became effective and closed on May 24, 1997, the effective date of chapter 97-97, Laws of Florida, which reenacted the amendments contained in chapter 95-182). But the legislature evidently has never reenacted the 1999 statutes. In the 2001 regular legislative session, Senate Bill 274 was introduced to accomplish a traditional biennial reenactment of the 1999 statutes. But the House proposed to begin reenacting statutes annually. Its bill, House Bill 657, would have reenacted the 2000 statutes, not the 1999 statutes.[3] The two bodies never agreed, and the 2001 regular legislative session ended without passage of a bill reenacting the 1999 statutes.[4] We have reviewed the records of the 2001 special legislative sessions and can find no evidence that the legislature passed a bill reenacting the 1999 statutes in those sessions, either.
Because the legislature has not reenacted the 1999 statutes, we believe the window period for single subject rule challenges to chapter 99-188 is still open. But the Salters court noted that, in certain circumstances, a single subject rule violation may be cured by means other than the *551 biennial reenactment. 758 So.2d at 670. It recognized that in Martinez v. Scanlan, 582 So.2d 1167 (Fla.1991), the legislature cured a single subject problem by convening a special session, separating the disparate provisions contained in the offending chapter into two distinct bills and individually reenacting the two bills into law. Salters, 758 So.2d at 670. To determine whether the Scanlan exception to the general rule applied to chapter 95-182, the Salters court examined the 1996 amendments to various statutory provisions addressed in the act. It particularly focused on the 1996 amendments to the violent career criminal sentencing provisions contained in chapter 95-182, because that was the portion of the legislation that affected Salters. The court found that the 1996 revisions to the violent career criminal sentencing provisions were amendments rather than reenactments, and for that reason it held that the Scanlan exception did not apply.[5]Id. at 671.
Accordingly, we have examined the 2000 and 2001[6] legislative amendments to the statutes affected by chapter 99-188, particularly focusing on the revisions to section 893.135 under which Taylor was sentenced. Chapter 2000-320, section 4, at 3490-99, Laws of Florida, amended numerous subsections and subparagraphs of section 893.135, deleting language that required sentencing "pursuant to the Criminal Punishment Code" and inserting language providing instead that the crimes are "punishable as provided in s. 775.082, s. 775.083, or s. 775.084." Chapter 2000-320, section 4, also added new penalties for trafficking in gamma-hydroxybutyric acid, 1,4-Butanediol and other listed substances. Importantly, though, chapter 2000-320 did not change the minimum mandatory terms imposed in chapter 99-188. In 2001, the legislature again amended section 893.135. The first revision changed some internal statutory references and the second revision amended the portion of the statute, first added in 2000, that addressed trafficking in gamma-hydroxybutyric acid. Ch.2001-55, § 2, at 358-67, Laws of Fla.; ch.2001-57, § 7, at 399-403, Laws of Fla. As in Salters, these revisions were amendments to the statute, not reenactments of it.[7] Therefore, the 2000 and 2001 amendments *552 to section 893.135 did not close the window for Taylor's single subject challenge to chapter 99-188. The window period remains open.
We reverse Taylor's sentence and remand for resentencing in accordance with the valid laws in effect on the date of her offense. We also certify that our decision passes on the following questions of great public importance.
1. DOES CHAPTER 99-188, LAWS OF FLORIDA, VIOLATE ARTICLE III, SECTION 6, FLORIDA CONSTITUTION, WHICH PROVIDES THAT EVERY LAW SHALL EMBRACE BUT ONE SUBJECT AND MATTER PROPERLY CONNECTED THEREWITH?
2. IF SO, WHAT IS THE WINDOW PERIOD FOR CHALLENGING THE ACT BASED ON THAT CONSTITUTIONAL INFIRMITY?
BLUE, C.J., and GREEN, J., Concur.
NOTES
[1] Taylor preserved her single subject rule argument. She may appeal her sentence under Florida Rule of Appellate Procedure 9.140(b)(2)(B)(iv).
[2] WHEREAS, in 1996, Florida had the highest violent crime rate of any state in the nation, exceeding the national average by 66 percent, and

WHEREAS, although this state possessed the highest state violent crime rate in 1996 in the nation, the incarceration rate in this state in 1996 was less than the incarceration rate in at least eleven other states, all of which had a lower violent crime rate than the rate in this state, and
WHEREAS, since 1988, criminals in this state have committed at least 1.6 million violent crimes against Floridians and visitors to this state, and
WHEREAS, the per capita violent crime rate has increased 86 percent in this state in the last 25 years, and
WHEREAS, in fiscal year 1996-1997, over 16,000 violent felons in this state were sentenced to probation, community control, and other punishments that did not incarcerate the violent felon for the maximum prison term authorized by law, and
WHEREAS, during that same fiscal year, less than 9,900 violent felons were sentenced to prison, while during that same period criminals committed approximately 150,000 violent felonies, and
WHEREAS, in this state, as of June 30, 1997, more violent felons were on probation, community control, control release, or parole, than were in state prison, and
WHEREAS, in 1997, only 15.6 percent of all persons convicted of a felony were sentenced to state prison, the second lowest rate of incarcerated felons since 1984, and
WHEREAS, the rate of incarcerated felons has declined seven out of the last eight years, and
WHEREAS, since fiscal year 1993-1994, the per capita prison population rate in this state has increased 10 percent and the proportion of violent offenders incarcerated in state prison has increased 5 percent, and
WHEREAS, since 1995, the Florida Legislature has enacted stronger criminal punishment laws, including requiring all prisoners to serve 85 percent of their court-imposed sentences, and
WHEREAS, since 1994, the violent crime rate in this state has decreased 9.8 percent, and
WHEREAS, the Legislature previously has found that a substantial and disproportionate number of serous crimes are committed in this state by a relatively small number of repeat and violent felony offenders, that priority should be given to the incarceration of career criminals for extended prison terms, and that, in the case of violent career criminals, such extended terms must include substantial minimum terms of imprisonment, and
WHEREAS, as of June 30, 1997, only 71 designated "violent career criminals" have been sentenced to mandatary prison terms, out of a prison population of over 65,000 state inmates; and this number does not approach the true number of repeat violent felony offenders in this state, and
WHEREAS, to be sentenced as a "violent career criminal," a felon must be convicted of a least four violent, forcible, or serious felonies and must have served a prison term, and
WHEREAS, current law does not require the courts to impose mandatory prison terms on violent felons who commit three violent felonies, and these three-time violent felony offenders should be sentenced to mandatary maximum prison terms to protect citizens of this state and visitors, and
WHEREAS, studies such as the recent report issued by the National Center for Policy Analysis, "Does punishment deter?", indicate that recent crime rates have declined because of the increasing number of incarcerated felons, and
WHEREAS, since California enacted "three strike" legislation in 1994 that requires courts to impose mandatory prison terms on repeat felony offenders convicted of three serious crimes, that state has experienced significant reductions in violent crime, and overall crime rates, and
WHEREAS, a study by the RAND Corporation estimates that the enforcement of this California legislation will reduce serious crime in California committed by adults between 22 and 34 percent, and
WHEREAS, the enactment and enforcement of legislation in Florida that requires courts to impose mandatory prison terms on three-time violent felony offenders will improve public safety by incapacitating repeat offenders who are most likely to murder, rape, rob, or assault innocent victims in our communities, and
WHEREAS, imposing mandatory prison terms on three-time violent felony offenders will prevent such offenders from committing more crimes in our communities, and likely accelerate recent declines in the violent crime rate in this state,....
[3] It is not clear what would have become of the 1999 statutes, or a window period that would close on the date of their reenactment, if House Bill 657 had become law.
[4] When House Bill 657 reached the Senate, the Senate amended it to conform with Senate Bill 274. Fla. S. Jour. 650-651 (Reg.Sess. 1999) ("Senate Amendment 1"). House Bill 657 returned to the House, which then amended the Senate amendment, effectively returning the House bill to its original language, that is, reenacting the 2000 rather than the 1999 Florida Statutes. Fla. H.R. Jour. 1971 (Reg.Sess.1999) ("House Amendment 1"). The Senate informed the House that it "has refused to concur in House Amendment 1 to Senate Amendment 1 to HB 657 and requests the House to recede." Id. at 2232. The House refused to recede from House Amendment 1 and again asked the Senate to concur. Id. The Senate again refused to concur in House Amendment 1 and certified its action to the House on May 4, 2001. Fla. S. Jour. 1589 (Reg.Sess. 2001). At this point the bill died.
[5] In chapter 96-388, section 45, at 2336, Laws of Florida, the legislature reenacted section 790.235, Florida Statutes, which established the crime of unlawful possession of a firearm by a violent career criminal. This provision was not specifically challenged in Salters v. State, 758 So.2d 667 (Fla.2000). The Salters court left open the question of whether the reenactment of section 790.235 closed the window for persons attempting to challenge a conviction under that particular statute on single subject grounds. 758 So.2d at 671 n. 9.
[6] We reviewed the 2001 amendments because of the legislature's failure to reenact the 1999 statutes. We believe Salters requires us to consider any amendments that occur when the window period to assert a single subject rule challenge is open.
[7] We have also examined the legislative revisions to other statutes contained in chapter 99-188. Chapter 2000-155, section 2, at 781, Laws of Florida, removed the word "is" from section 943.1535, Florida Statutes. Chapter 2000-246, section 3, at 2404-06, Laws of Florida, reenacted section 775.082(9) for the purpose of incorporating amendments to section 800.04, contained in section 1 of the chapter. Chapter 2001-239, section 1, at 2192-93, Laws of Florida, amended section 775.082(9), changing language concerning burglary of a dwelling and adding language applying the statute to felons released from custody in jurisdictions other than Florida. Chapter 2001-279, section 49, at 3201, Laws of Florida, reenacted section 810.011(5)(b), Florida Statutes, to incorporate other amendments made in the chapter. Again, these revisions were amendments, not reenactments that would have closed the window period for single subject challenges under the exception noted in Martinez v. Scanlan, 582 So.2d 1167 (Fla.1991).