860 So.2d 483 (2003)
Rafael HERNANDEZ-MOLINA, Appellant,
v.
STATE of Florida, Appellee.
No. 4D03-215.
District Court of Appeal of Florida, Fourth District.
November 19, 2003.
*485 Rafael Hernandez-Molina, Bristol, pro se.
No appearance required for appellee.

EN BANC
WARNER, J.
The issue presented in this appeal is the constitutionality of Chapter 99-188, Florida Statutes, pertaining to the punishment of felony offenders. Appellant contends the law violates the single subject provision of Florida's Constitution because it includes unrelated provisions. Because the statute is presumed constitutional, and any invalidity on single subject matter must appear beyond a reasonable doubt, we conclude that appellant has not met that burden. The provisions of the legislative act are all logically related and further the purpose of the act, which is to protect the public from serious felony offenders. We hold the legislation to be constitutional, agreeing with State v. Franklin, 836 So.2d 1112 (Fla. 3d DCA), review granted, 854 So.2d 659 (Fla.2003), and certifying conflict with Taylor v. State, 818 So.2d 544 (Fla. 2d DCA 2002).
Appellant was charged under section 893.135(1)(b)1.b., Florida Statutes (1999), with trafficking in cocaine in excess of 200 grams. Appellant pled no contest and was sentenced to seven years in prison with a seven-year mandatory minimum sentence. He brought a motion to correct an illegal sentence, arguing that the amendments to section 893.135 by Chapter 99-188, Laws of Florida, violated the single subject provision of Florida's Constitution as held in Taylor v. State, 818 So.2d 544 (Fla. 2d DCA), review dismissed, 821 So.2d 302 (Fla.2002). Section 9 of Chapter 99-188 amended the statute to create the seven-year mandatory term which appellant received for trafficking in cocaine. The trial court summarily denied appellant's motion, concluding that the Legislature's retroactive application of the re-enactment cure in Chapter 02-212, Laws of Florida, as approved by Hersey v. State, 831 So.2d 679 (Fla. 5th DCA 2002), closed the window period.
For reasons expressed in Green v. State, 839 So.2d 748 (Fla. 2d DCA 2003), we hold that retroactive application of a cure to a single subject violation is contrary to the ex post facto clauses of both the United States and Florida Constitutions. See U.S. Const. art. I, § 10, cl. 1; Art I, § 10, Fla. Const. We recede from our published opinions relying on Hersey.[1] We therefore proceed to consider the constitutionality of Chapter 99-188.

Single Subject Analysis
Article III, section 6, of the Florida Constitution contains the single subject requirement for laws passed by the Legislature:
Every law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title.
This section is substantively similar to article III, section 16 of the 1885 Constitution, see Art. III, § 16, Fla. Const. (1885), and also appeared in the Constitution of 1868. See State ex rel. Flink v. Canova, 94 So.2d 181, 183 (Fla.1957). Thus, Florida courts have construed this provision for well over one hundred years. In Flink, the supreme court first explained the purpose of the provision from its historical root, drawing *486 on Cooley, A Treatise on the Constitutional Limitations (1874):
[T]he purpose of those provisions was (1) to prevent hodge podge or `log rolling' legislation, i.e., putting two unrelated matters in one act; (2) to prevent surprise or fraud by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and (3) to fairly apprise the people of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon. [T]he general disposition of the courts was to construe the constitutional provision liberally, rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted.
Id. at 184. The court then summarized the principles applied in interpreting the single subject clause:
In determining if matters are properly connected with the subject, the test is whether such provisions are fairly and naturally germane to the subject of the act, or are such as are necessary incidents to or tend to make effective or promote the objects and purposes of legislation included in the subject.

Also, if a matter properly connected with the subject is also named in the title to the act, no material harm has been done. A title merely mentioning matters germane to one subject is not invalid as relating to more than one subject; amplification of the title does not vitiate it.
The subject of an act is the matter to which it relates and the object is its general purpose. It is of course not necessary that the objects be included in the title of the act. Only the subject and not matters properly connected therewith is required by the constitution to be expressed in the title to the act.
Id. at 184 (citations omitted) (emphasis added). Finally, the court provided for a highly deferential standard of review with a presumption in favor of validity and a "beyond a reasonable doubt" standard to overcome the presumption:
Should any doubt exist that an act is in violation of art. III, Sec. 16 of the Constitution, or of any constitutional provision, the presumption is in favor of constitutionality. To overcome the presumption, the invalidity must appear beyond reasonable doubt, for it must be assumed the legislature intended to enact a valid law. Therefore, the act must be construed, if fairly possible, as to avoid unconstitutionality and to remove grave doubts on that score.
Id. at 184-85 (emphasis added).
Following this precedent, the court explained in Martinez v. Scanlan, 582 So.2d 1167 (Fla.1991), the wide latitude given to the Legislature in applying the single subject limitation:
The purpose of this constitutional prohibition against a plurality of subjects in a single legislative act is to prevent "logrolling" where a single enactment becomes a cloak for dissimilar legislation having no necessary or appropriate connection with the subject matter. The act may be as broad as the legislature chooses provided the matters included in the act have a natural or logical connection.
Id. at 1172 (citations omitted). In applying these principles, the court has defined the subject broadly where the Legislature has addressed an issue comprehensively. However, where the act is more limited in its provisions, the court has defined the subject narrowly. It has consistently rejected *487 the combination of civil provisions with criminal provisions except in a comprehensive act dealing with a "crisis."
The court has found a "natural or logical connection" where an act intends to comprehensively address a "crisis." Thus, in Smith v. Department of Insurance, 507 So.2d 1080, 1085-87 (Fla.1987), the court approved the joining of disparate topics regarding insurance and tort reform because they all were related to a liability insurance crisis. Accord Chenoweth v. Kemp, 396 So.2d 1122 (Fla.1981), receded from on other grounds, Sheffield v. Superior Ins. Co., 800 So.2d 197 (Fla.2001); State v. Lee, 356 So.2d 276 (Fla.1978). In Burch v. State, 558 So.2d 1, 2-3 (Fla.1990), the court approved an act which included a comprehensive revision of substantive criminal provisions and procedures with provisions dealing with safe neighborhoods and money laundering, many of which were civil provisions, on the ground that the act addressed a criminal "crisis."
On the other hand, where only two provisions were included in an act, one dealing with criminal law and the other dealing with a civil regulatory matter, the court held that the single subject clause was violated. See State v. Johnson, 616 So.2d 1 (Fla.1993) (act which joined provisions regarding habitual offender sentencing with provisions on repossession of motor vehicles by private investigators violated single subject requirement); Bunnell v. State, 453 So.2d 808 (Fla.1984) (act joining provision for criminal penalty for obstruction of justice by false information with provisions relating to the Florida Council on Criminal Justice violated single subject rule as provisions had no cogent relationship).
In both Heggs v. State, 759 So.2d 620 (Fla.2000), and State v. Thompson, 750 So.2d 643 (Fla.1999), the court struck down legislative acts which joined criminal provisions with civil provisions. The statute in question in Heggs included provisions amending various substantive criminal statutes and increasing punishments. In addition, the act included provisions creating a civil cause of action for injuries inflicted in violation of a domestic violence injunction. The court found that the act violated the single subject requirement because it contained civil domestic violence provisions with the criminal provisions. See 759 So.2d at 626. Moreover, it explained that the inclusion of the domestic violence provisions was a "classic act of logrolling." Id. at 627. In Thompson, the court noted that the domestic violence provisions had originally failed to pass as a separate bill and were added on the floor of the House very near the end of the regular session. 750 So.2d at 648.
Most recently, in Tormey v. Moore, 824 So.2d 137, 141 (Fla.2002), the court determined for the first time that an act containing two criminal provisions failed the single subject test because the provisions were not "reasonably connected." In Tormey, however, the issue was primarily one of a title defect that made the title misleading. The act contained provisions regarding criminal penalties for crimes against law enforcement, including the exclusion of provisional credits. During the amendment process, this was expanded to include the exclusion of credits to any person convicted of murder or attempted murder against any person, not just law enforcement. While the title of the act included the phrase "An Act Relating to Criminal Penalties," the remainder of the title as well as the preamble of the act revealed "that the Legislature intended and in fact named the act the `Law Enforcement Protection Act.'" See id. at 140. No mention was made in the title of the increased scope of the act to include increased penalties against persons convicted *488 of general murder. See id. In this context, the court held that the exclusion of provisional credits for murder in general was not reasonably connected with the `express' subject of the act which was increased penalties for crimes against law enforcement. See id. at 141. Thus, the act addressed more than one subject, and the title did not include a reference to the general murder provisions of the act. Because the title did not contain the challenged section, the court found that it could sever that section from the remaining sections without offending the constitutional provisions. See id. at 142.

Chapter 99-188
The district courts of appeal are split on whether Chapter 99-188 violates the single subject provision of the constitution. As noted in Taylor, the thirteen sections of the act include six relating to increased punishment for violent or repeat felony offenders; one relating to increased punishment for trafficking in certain amounts of drugs;[2] three sections involving the implementation of the act's provisions; one section creating a new offense of repeat sexual batterer; section 13, amending the definition of conveyance in the burglary statute; and section 11, concerning the duty of the clerk to furnish a copy of the judgment and sentence of any convicted alien to the INS. 818 So.2d at 546-47.
In Taylor, the second district found that all of the sections were logically connected except sections 11 and 13. The court determined that while all of the other sections dealt with sentencing, section 13 merely amended the definition of a conveyance to include a "railroad vehicle" as well as a railroad car in the definition of burglary. See id. at 549. It reasoned:
This slight expansion of a substantive criminal offense has only an attenuated relationship to sentencing ... in that it might be argued that under the broader definition of a conveyance more felons could be convicted of "armed burglary," one of the qualifying crimes for three-strikes sentencing.... But that relationship is so tenuous, so dependent on the happenstance of individual cases, that it simply cannot be characterized as natural or logical.
Id. at 549 (citation omitted). It also found that section 11 addressed a purely administrative subject which had nothing to do with the act's other sections. See id. Because of the inclusion of these two unrelated sections, the act violated the single subject requirement, and the court held it unconstitutional. See id. at 550.
*489 The third district took an opposite view in State v. Franklin, 836 So.2d 1112 (Fla. 3d DCA 2003). That court concluded that both of the sections which Taylor found unrelated were sufficiently related to the general purpose of the act as a whole, which was to "protect the public from repeat and serious violent felony offenders." 836 So.2d at 1113. Section 11, requiring the clerk to forward a copy of the criminal judgment and sentence to the INS, was reasonably related to that purpose by assuring a more prompt removal of alien offenders from the country. See id. at 1114. As to the amended definition of "conveyance" in the burglary statute, the court found it had the effect of expanding the reach of the armed burglary statute, one of the offenses included in the Habitual Felony Offender Act, effecting the increase of sentences available to violators of the statute. See id. The court concluded, "In any event, the statute as a whole is quite plainly not `a cloak' for dissimilar legislation having no necessary or appropriate connection with the subject matter'...." Id.
After considering the presumption of constitutionality of a statute on single subject grounds, and that a statute should not be invalidated on single subject grounds unless its invalidity appears beyond a reasonable doubt, see Flink, 94 So.2d at 184-85, we agree with the third district's analysis and conclude that the questioned provisions are sufficiently connected to the subject and effectuate the purpose of the legislation such that we cannot say it violates the single subject requirement beyond a reasonable doubt.
The title to Chapter 99-188 begins, "An act relating to sentencing." It then lists each and every provision contained within the act, including sections 11 and 13. See Ch. 99-188, at 1036-38, Laws of Fla. Because the title fully informs of the provisions of the act, the title is not defective or misleading, as it was in Tormey. The title of the act places the public on notice of exactly what the act contains.[3]
As explained in Flink, "[i]n determining if matters are properly connected with the subject, the test is whether such provisions are fairly and naturally germane to the subject of the act, or are such as are necessary incidents to or tend to make effective or promote the objects and purposes of legislation included in the subject." 94 So.2d at 184 (emphasis added). We agree with the third district that the purpose of the act is to increase the penalties on certain crimes and certain offenders for the protection of the public. Thus, the subject is sentencing, and the purpose is to protect the public through increased punishments.
Section 11, requiring the clerk to send a copy of an alien's conviction and sentence to the INS, is related to the subject and the purpose of the act. There is a logical connection between convicting and sentencing an alien and notifying the INS, the agency in charge of deporting criminal aliens, of that fact, when the alien is subject to deportation at the end of his or her sentence. It is merely an administrative provision which tends to promote the purpose of the legislation to protect the public, as the third district noted, so alien offenders can be removed from the country upon completion of their sentences.
*490 Section 13, which amends the definition of conveyance, also relates to the subject of sentencing and increased punishment, albeit indirectly. That section was introduced by the Senate sponsor of the bill, Senator Lee, at the Fiscal Policy Committee meeting before the bill was sent to the Senate floor. Senator Lee noted that the amendment was brought to him by a constituent. He explained that because of ambiguity in the present definition in the statute, which covered only railroad cars, it had prevented successful prosecution of persons committing burglary offenses against conductors of railroad locomotives. See State Archives, Tape of Hearing of Senate Fiscal Policy Committee (Apr. 14, 1999). The amendment would specify that such conduct would constitute burglary and not a lesser offense. As the third district noted, it would expand the conduct included in "armed burglary," one of the qualifying offenses in the Habitual Felony Offender Act. See Franklin, 836 So.2d at 1114. It was proposed so that a serious crime against a person, a railroad conductor, would be punished accordingly. Thus, the statute clearly provides for an increased sentence for a person committing a serious crime. As such, it relates both to the subject and purpose of the entire act.
We follow Flink which explained that the single subject constitutional provision should be liberally construed, "rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted." 94 So.2d at 184. The purpose of the single subject provision was to prevent "logrolling," which has generally been defined as including several propositions in one measure so that the legislature will pass all of them, even though the propositions individually may not have passed. See Black's Law Dictionary (7th ed.1999). Logrolling was present in Heggs, where a measure which could not pass on its own, the civil remedies for domestic violence, was added on the floor of the House to a popular bill increasing criminal punishment. Chapter 99-188 is not an example of such logrolling. All of the provisions dealt with the criminal law and can be linked to one subject and the accomplishment of the purpose of the legislation. There is absolutely no suggestion that any of the provisions of this law would not have passed had they been introduced in separate bills. We should apply the single subject provision to avoid a "construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted." Flink, 94 So.2d at 184.
For these reasons, we affirm the judgment of the trial court denying appellant's motion to correct an illegal sentence. We note express conflict with Taylor v. State, 818 So.2d 544 (Fla. 2d DCA 2002).
FARMER, C.J., STONE, POLEN, STEVENSON, SHAHOOD, GROSS and MAY, JJ., concur.
HAZOURI, J., concurs in part and dissents in part in which GUNTHER, KLEIN and TAYLOR, concur.
HAZOURI, J., concurring in part and dissenting in part.
I concur in the majority's conclusion that the retroactive application of the re-enactment cure in Chapter 02-212, Laws of Florida, as approved by Hersey v. State, 831 So.2d 679 (Fla. 5th DCA 2002), should be rejected and concur that Green v. State, 839 So.2d 748 (Fla. 2d DCA 2003), is the better reasoned decision precluding the retroactive application of a cure to a single subject violation. However, I dissent from the majority's conclusion that Chapter 99-188 *491 does not violate Article III, section 6, of the Florida Constitution.
In Taylor v. State, 818 So.2d 544 (Fla. 2d DCA 2002), the Second District held that Chapter 99-188, Laws of Florida, violates the single subject requirement of the Constitution of the State of Florida. The single subject requirement provides: "Every law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title." Art. III, § 6, Fla. Const. The title to Chapter 99-188 begins: "An act related to sentencing." Finding that general sentencing was the expressed subject of the act, the court in Taylor found that the following three sections of the law were not logically or naturally related to this subject: section 13, which amended the definition of "conveyance" in the burglary statute; section 11, which amended the administrative duty of the clerk of the court to provide records to immigration officers; and section 7, which created the "new offense" of repeat sexual offender. Id. at 549-550.
While I agree with the ultimate holding of Taylor that Chapter 99-188 violates the single subject requirement, I find the single subject violation to be more pervasive than identified by the Second District. Although the first line of the title suggests the subject of this law is sentencing in general, the next line begins to narrow the subject, "creating the `Three-Strike Violent Felony Offender Act.'" The nearly four-page title goes on to refine and significantly restrict the subject of the act. Twenty-one "WHEREAS" clauses identify a crisis in our sentencing laws concerning recidivist violent criminals. The expressed purpose of this law culminates in section one's declaration: "This act may be cited as the `Three-Strike Violent Felony Offender Act.'" In my view the subject identified by the title of this act concerns matters related to enhanced sentencing for repeat violent felony offenders. Single subject analysis requires more than a mere examination of the introductory phrase, "An act relating to sentencing."
In Heggs v. State, 759 So.2d 620 (Fla. 2000), for example, the Supreme Court of Florida read beyond the introductory phrase, "An act relating to the justice system," in determining whether Chapter 95-184 violated the single subject requirement. The Court also looked beyond the same introductory phrase in State v. Thompson, 750 So.2d 643 (Fla.2000), in determining the subject of an act. Recently, the Court again performed a similar analysis in Tormey v. Moore, 824 So.2d 137 (Fla.2002). The law under attack in Tormey was titled the "Law Enforcement Protection Act." All of the body of the Act dealt with increased penalties for people who commit crimes against law enforcement personnel except one section which denied provisional credits for a person convicted of murder or attempted murder of anyone. Id. at 140. The Court explained that "[t]he key to the resolution of this case is the true title of the act in question." Id. Although the beginning of the act indicated it was "an act relating to criminal penalties," the focus of the act was narrowed and restricted in its intent to the protection of law enforcement. Id. The Court found support for this conclusion in the WHEREAS clauses, which clearly identified a crisis concerning the risk to law enforcement personnel. The situation in Chapter 99-188 is analogous.
The expressed subject of the "Three-Strike Violent Felony Offender Act" is enhanced sentencing for recidivist violent felons. The Act contains various provisions which are not "properly connected therewith" and, therefore, violates the single subject requirement.
*492 As pointed out in Taylor, section 11, amending the administrative duty of the clerk of the court, and section 13, amending the definition of a conveyance in the burglary statute, fail to naturally and logically relate to the single subject expressed by the Act's title. In addition, section 9, which amends the quantity of drugs used in classifying trafficking offenses and requires minimum mandatory sentences on certain trafficking offenses, does not naturally or logically relate to the expressed subject of this Act, i.e., repeat violent felony offenders. The provisions contained in an act must be "fairly and naturally germane to or reasonably connected" with the subject of the act. See State v. Reedy Creek Improvement Dist., 216 So.2d 202, 206 (Fla.1968).
In State v. Franklin, 836 So.2d 1112 (Fla. 3d DCA 2003), review granted, 854 So.2d 659 (Fla.2003), the Third District found that Chapter 99-188 did not violate the single subject requirement as all the sections of the Act were sufficiently related to the purpose of the Act "to protect the public from repeat and serious violent offenders." Id. at 1113-1114. Although the purpose of the Act was protecting the public from repeat and serious violent felony offenders, I cannot agree that all the provisions of the Act are sufficiently related.
The majority opinion in Franklin finds "no difficulty in concluding that the legislature acted within its authority in determining that imposing harsher penalties for drug crimes is related to the occurrence of violent offenses in our community." Id. at 1114 n. 3. While some relation may exist between trafficking offenses and violent crime, I have great difficulty concluding that such a relation is natural or reasonable, especially where the Legislature makes no hint of any relation between these two seemingly distinct subjects.
The connection urged by Franklin and adopted by the majority in the instant case seems artificial and strained. While drug trafficking may, in some situations, lead to the commission of violent felonies, the same logical leap of faith could be made with almost any criminal provision. Such an expansive interpretation of the phrase, "matters properly connected therewith," could be used to "logically" create a connection between almost any two legal provisions no matter how obviously distinct. As a result, every act could pass single subject muster if a creative court could find "some possible relation" with the subject, no matter how tenuous the connection may be.
Equally tenuous is the Franklin majority's suggestion that the administrative duty of the clerk somehow relates to violent felons, "because it insures the removal of these felons from the country." Id. at 1114. The administrative duty pertains to records of misdemeanants as well as felons whether violent or not. Franklin's strained reasoning could be used to relate the addition of "railroad car" to the definition of "conveyance" in the burglary statute. The commission of a burglary of a railroad car might, in some situation, be violent and possible of repetition, and therefore, such a provision could relate to the sentencing of repeat violent felons. This stretches the reasonable relation requirement to the point of breaking.
The constitutional requirement for an act's title is that it give notice as to the act's contents, and, moreover, not mislead the public or the legislature as to the scope of the act. See King Kole, Inc. v. Bryant, 178 So.2d 2, 4 (Fla.1965). What is required is notice of the subject of the act sufficient to reasonably lead to inquiry into the body of the act, preventing fraud or surprise from provisions contained therein. The test of whether a title misleads is *493 whether it would deceive the mind of an ordinary person used to the common meaning of language, not the mind of a precisionist used to technical refinements of terms. Id. Courts must strike down an act which clearly offends the above cited constitutional requirement but should refuse to declare an act void as violative of this section except in clear cases free from every reasonable doubt. See Ex parte Pricha, 70 Fla. 265, 70 So. 406 (1915).
The Legislature clearly identified a subject in the title to Chapter 99-188. An ordinary person reading this title is on notice that the Act will deal with sentencing repeat violent offenders. While the Legislature generally can make an act as broad as it chooses, the title must give reasonable notice of an act's breadth. The Legislature may also make an act as narrow as it chooses. The requirement that "the subject be briefly expressed in the title" does not mandate that the subject is only that which is briefly expressed in the word or words following "[a]n act relating to." A reading of the complete title will often reveal that the scope of an act is significantly narrower. Such is the case in Chapter 99-188 where the title notices the legislative intent to enhance sentencing for repeat violent felony offenders. The title of this Act does not notice an intent to broadly amend sentencing laws in general.
Accepting as the title, "an act related to sentencing," and ignoring the remaining substance of the title, which significantly narrows the scope of the act, would make the title affirmatively misleading. An ordinary person reading this title would in my judgment form the conclusion that this Act addressed repeat violent offenders. Such a reading is supported by the Legislature's choice of a name for the Act, The Three-Strike Violent Felony Offender Act. The title does not fairly give notice that this Act will be modifying the quantity of drugs used for drug trafficking classification or imposing mandatory sentences for drug offenses. The Legislature identified a limited crisis concerning violent felony offenders, not a broad crisis in sentencing in general.[4] No indication is given that this crisis relates in any fashion to drug trafficking offenses.
The brief expression of the subject, "sentencing," gives only general notice of the overall subject of the Act. It is difficult to say in this situation that this brief title really identifies the single subject that was to be the object of this legislation. A reading of the entire title leads to the inescapable conclusion that the true subject of this Act was sentencing as it properly relates to protecting the public from repeat violent felony offenders.
The second part of the single subject requirement requires that all the provisions of the act properly relate to the single subject expressed by the title. The crisis identified in the title to Chapter 99-188 is a narrow one, not a broad ranging crisis in sentencing generally. Reading the title does not fairly give notice that the provisions of the Act will be addressing the laws relating to drug trafficking. The amendments to the trafficking definitions and the mandatory minimum sentences for these offenses do not logically relate to the single subject identified by the title. A hodge podge of unrelated provisions thoroughly confuses the subject of the legislation and entirely undermines any confidence that an act represents the will of the majority of legislators.
*494 The window period for challenging sentences under Chapter 99-188 began on July 1, 1999 and ended April 29, 2002 with the enactment of Chapter 02-212. As Hernandez-Molina committed the offense he challenges during this period, he is entitled to be sentenced under the statute that was validly in place at the time of his offense. I would reverse and remand for resentencing under the proper statute.
GUNTHER, KLEIN and TAYLOR, JJ., concur.
NOTES
[1] We have released several PCA opinions citing or relying on Hersey from which we now recede. See Bruso v. State, 837 So.2d 1077 (Fla. 4th DCA 2003); Nieves v. State, 833 So.2d 190 (Fla. 4th DCA 2002); Green v. State, 832 So.2d 199 (Fla. 4th DCA 2002).
[2] Although the dissent also finds a lack of connection with regard to the provisions regarding drug offenses in the act, neither the second district nor the third district found that those provisions caused a single subject violation, nor do we. Those sections deal with sentencing, and their intent was to increase punishment for trafficking offenses. The Staff Analysis of both Legislative chambers confirms this. Those sections increasing the mandatory minimum punishments for drug trafficking was the legislative effort to restore the minimum mandatory penalties to those in Florida law prior to their removal in 1994. See H.R. Comm. on Corrections, Final Analysis, Bill CS/HB 121, 1999 Leg. Sess., at 24. Those sections defining a "cannabis plant" and providing how a court should sentence based upon the weight and number of plants was included to harmonize Florida law with prevailing Federal law so as to punish growers based upon the scale of their operation. See Senate Staff Analysis, Criminal Justice Comm., Bill CS/SB 1746, 1999 Leg. Sess., at 9. An example given in the staff analysis shows that where the weight of the cannabis falls into a three year mandatory minimum but the number of plants would amount to a seven to fifteen year mandatory minimum, the court would be required to sentence the offender to the higher minimum. Id. at 16. In all of the sections of the act regarding drug offenses, the intent was to increase punishment for serious drug offenses.
[3] The title to this act is not limited as the dissent suggests. Contrary to the dissent, the title does not narrow but expands its reach by including a reference to each section of the act. "[A]mplification of the title does not vitiate it." See Flink, 94 So.2d at 184 (citations omitted).
[4] The Supreme Court of Florida made a similar observation in finding the law at issue in State v. Thompson, 750 So.2d 643, 648 (Fla. 2000), violated the single subject rule: "the Legislature has not identified a broad crisis encompassing both career criminals and domestic violence."