836 So.2d 1112 (2003)
The STATE of Florida, Appellant,
v.
Corey FRANKLIN, Appellee.
No. 3D02-957.
District Court of Appeal of Florida, Third District.
February 12, 2003.
*1113 Charlie Crist, Attorney General and Michael J. Neimand (Fort Lauderdale), Assistant Attorney General, for appellant.
Bennett H. Brummer, Public Defender and Billie Jan Goldstein and Lisa Walsh, Assistant Public Defenders, for appellee.
Before SCHWARTZ, C.J., and JORGENSON, COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, SHEVIN and RAMIREZ, JJ.

ON HEARING EN BANC
SCHWARTZ, Chief Judge.
Following Taylor v. State, 818 So.2d 544 (Fla. 2d DCA 2002), review dismissed, 821 So.2d 302 (Fla.2002), the trial court granted the defendant's motion to correct an allegedly illegal sentence by eliminating his designation and consequent sentence as a habitual felony offender, upon the holding that the statute which provided for that result, Chapter 99-188, Laws of Florida, the "Three-Strike Violent Felony Offender Act," was unconstitutional as violative of the single subject requirement of the Florida Constitution. See Art. III, § 6, Fla. Const. While the trial court was bound by Taylor, we are not. After en banc consideration, we hold, directly contrary to Taylor, that the statute is not invalid and therefore reverse the order below.
The issue of whether a multi-section statute violates the "single subject" rule is one of those perplexing legal controversies in which general rules and decisions embracing them may be found, indeed multiplied, on each side of the particular controversy, compare State v. Johnson, 616 So.2d 1 (Fla.1993); State v. Thompson, 750 So.2d 643 (Fla.1999), and cases cited therein; Grant v. State, 770 So.2d 655 (Fla.2000), and the result, and the group of cases to be cited in support of it, lies ultimately in the eye of the judicial beholder. See Poole v. Veterans Auto Sales & Leasing Co., 668 So.2d 189 (Fla.1996), citing Montgomery Ward & Co. v. Pope, 532 So.2d 722, 722-24 (Fla. 3d DCA 1988)(Schwartz, C.J., dissenting). Since this is true, and since the Supreme Court will necessarily itself resolve the conflict with Taylor anyway, it is necessary only rather summarily to announce that we believe that each provision of the statute is sufficiently related to the others and to the general purpose of the act as a whole, and that the constitution is therefore satisfied.
As its name implies,[1] the statute was designed to protect the public from repeat and serious violent felony offenders. With respect to the two of the thirteen sections[2] of the statute questioned by Taylor, section 11, which imposes a duty to *1114 transmit the judgment of convicted aliens to federal authorities, is, we think, reasonably related to that purpose because it insures the removal of these felons from the country after their state sentences have been served. Similarly, although less obviously, section 13, which amends the definition of "conveyance" in the burglary statute to include a "railroad vehicle" as well as a "railroad car," effects the expansion of the definition of the crime of armed burglary, one of the offenses included in the Habitual Felony Offender Act.[3] In any event, the statute as a whole is quite plainly not "a `cloak' for dissimilar legislation having no necessary or appropriate connection with the subject matter," State v. Lee, 356 So.2d 276, 282 (Fla.1978), and thus does not violate Article III, Section 6, of the Florida Constitution.[4][5]
*1115 Accordingly, the order below is reversed. On remand, the designation of the defendant as a habitual felony offender shall be restored and his sentence adjusted accordingly.
Reversed, conflict certified.
LEVY, GODERICH, FLETCHER, SHEVIN, and RAMIREZ, JJ., concur.
GREEN, J. (dissenting).
For the reasons stated in Taylor v. State, 818 So.2d 544 (Fla. 2d DCA 2002), review dismissed, 821 So.2d 302 (Fla.2002), it is my belief that Chapter 99-188, Laws of Florida, is violative of the single subject requirement of the Florida Constitution. See Art. III, § 6, Fla. Const. Therefore, I respectfully dissent.
JORGENSON and GERSTEN, JJ., concur.
COPE, J. (dissenting).
Under any proper analysis, there is a single subject violation in this case.

*1116 I.
I write separately to propose that there is a simple method of analysis which should be followed in single subject cases. The key to this analysis is found in the constitutional provision itself, which states, "Every law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title." Fla. Const. Art. III, § 6 (1968) (emphasis added).
The key to single subject analysis is that the Legislature must state the single subject in the title. It is the Legislature's responsibility to say what the single subject is. Where a single subject challenge is raised, the judiciary's sole role is to find the legislatively-stated single subject and determine whether it covers the contents of the legislative Act.
Under the relevant constitutional provisions the judiciary is not allowed to rewrite the legislatively-stated single subject. If the judiciary does this, it violates Article III, Section 6, as well as the doctrine of separation of powers. Id. Art. II, § 3.
Once these principles are understood, single subject analysis becomes straightforward. But it is plain from recent single subject decisions that there is widespread confusion about what an Act's title is, and where to find the legislative statement of the single subject. The main point of this separate opinion is to suggest a pathway for single subject analysis.
The method of analysis I outline here can, I believe, readily be applied to almost all single subject cases. Regrettably, it cannot be applied in the case now before us on account of the Florida Supreme Court's recent decision in Tormey v. Moore, 824 So.2d 137 (Fla.2002). In that case, the court created a special rule where the Act includes a citation namea "may be cited as" name. Id. at 140. It is my hope that the analysis presented here will persuade the court to recede from that part of Tormey which discusses what a title and single subject are. Tormey does make a positive contribution in allowing the remedy of severance in single subject cases, and that part of Tormey should be preserved intact.

II.
Before addressing the details of single subject analysis, a word should be said about the purpose of the single subject rule.
The main purpose of the single subject rule is notice. In order to assure that legislators, the public, and press understand what is contained in any item of proposed legislation, the single subject rule requires that a fair statement of the single subject appear in the title.
In the 2002 regular legislative session, over two thousand bills were introduced in each house of the Legislature. Fla. H.R. Jour. 3283 (Reg.Sess.2002); Fla. S. Jour. 2209 (Reg.Sess.2002). It is impossible for anyone involved in the processlegislators, public, or pressto read the text of each bill in order to discover what it deals with.
As has been stated:
The single subject rule has a two-fold purpose. First, it attempts to avoid surprise or fraud by ensuring that both the public and the legislators involved receive fair and reasonable notice of the contents of a proposed act. Secondly, the limitation prevents hodgepodge, logrolling legislation.
In re Advisory Opinion to the Governor, 509 So.2d 292, 313 (Fla.1987) (citations omitted).
If the single subject set forth in the title is, for example, "taxation," then legislators, the public, and the press should be able to rely on the fact that the bill relates only to taxationand does not contain a hidden *1117 provision relating, say, to environmental regulation.
As long as there is fair notice of the single subjectas stated in the titleeveryone has fair opportunity to read the piece of legislation and determine what the proposed enactment will do.

III.
Single subject analysis should be simplicity itself.
The key point is that there must be a statement of the single subject, and this single subject "shall be briefly expressed in the title." Fla. Const. Art. III, § 6 (emphasis added).
Thus:
1. Find the title.
2. Find the single subject which is stated in the title.
3. Determine whether the stated single subject covers the contents of the Act.

A.

Find the Title.
The title is always the language which begins, "An act relating to," and ends, "providing an effective date." The relevant version of the Act is the one which has been published in the Laws of Florida.
There are numerous Florida cases construing the single subject rule. Many of these quote the title, and it is plain from all of those decisions that the title is the language which begins "An Act relating to." See Loxahatchee River Environmental Control Dist. v. School Bd. of Palm Beach County, 515 So.2d 217, 219 (Fla. 1987); Bunnell v. State, 453 So.2d 808, 809 (Fla.1984); State ex rel. Shevin v. Metz Const. Co., Inc., 285 So.2d 598, 599 (Fla. 1973); City of Pensacola v. Shevin, 396 So.2d 179, 180 (Fla.1981); Purk v. Federal Press Co., 387 So.2d 354, 358 (Fla.1980); United Gas Pipe Line Co. v. Bevis, 336 So.2d 560, 565 (Fla.1976); Shepard v. Thames, 251 So.2d 265, 266 (Fla.1971); Town of Monticello v. Finlayson, 156 Fla. 568, 23 So.2d 843, 845-46 (1945); Dade County v. Kerce, 137 Fla. 194, 188 So. 642, 643 (1938); State ex rel. Lichtenstein v. Coleman, 133 Fla. 717, 183 So. 163, 164 (1938); City of Hialeah v. State ex rel. Ben Hur Life Ass'n, 128 Fla. 46, 174 So. 843, 845 (1937); State ex rel. Dowling v. Butts, 111 Fla. 630, 149 So. 746, 748 (1933); City of Lakeland v. Amos, 106 Fla. 873, 143 So. 744, 746 (1932); State v. Sullivan, 99 Fla. 1070, 128 So. 478, 480 (1930); Whitney v. Hillsborough County, 99 Fla. 628, 127 So. 486, 490 (1930); State v. Love, 99 Fla. 333, 126 So. 374, 378 (1930); McSween v. State Live Stock Sanitary Bd., 97 Fla. 750, 122 So. 239, 242 (1929); Jackson Lumber Co. v. Walton County, 95 Fla. 632, 116 So. 771, 776 (1928).

B.

Find the Single Subject
The next step is to find the single subject within the title. This, too, is easily accomplished.
By custom, the single subject is the phrase which appears just after "An act relating to." If for example the initial phrase is "An Act relating to taxation," then the single subject is taxation.

C.

Determine if the Act Falls Within the Stated Single Subject
The final step in the single subject analysis is to determine if the contents of the legislative Act fall within the stated single subject. Thus, if the stated single subject is taxation, and all of the provisions of the Act embrace that "subject and matter properly connected therewith," Fla. Const. Art. III, § 6, then the single subject rule has been satisfied and the statute is constitutional.

*1118 IV.
Although the foregoing is well established, it can also be demonstrated from legislative materials that the title to an Act is that segment which begins "An Act relating to." That is so because it is the legislative prerogative to say what the title is. 48A Fla. Jur.2d Statutes § 65, at 347 & nn. 9-12 (2000) (collecting cases).
Every bill which is filed in the legislature begins as follows: "A bill to be entitled." What follows is, of course, the title.
Further, under the dictates of Article III, Section 7, each bill is to be read in each house of the Legislature three times by title, and we know what the bill title is because it is contemporaneously published in the journal of each house. See State v. Kaufman, 430 So.2d 904, 905 (Fla.1983).
For illustration consider Senate Bill 1636, introduced in the 2002 legislative session. The bill reads as follows:
A bill to be entitled
An act relating to corrections; amending s. 944.02, F.S.; redefining the term "prisoner" for purposes of the state corrections code; providing penalties; providing an effective date.
Be It Enacted by the Legislature of the State of Florida.
Section 1. Subsection (6) of section 944.02, Florida Statutes, is amended to read:
944.02 Definitions.The following words and phrases used in this chapter shall, unless the context clearly indicates otherwise, have the following meanings:
(6) "Prisoner" means any person who is under arrest and in the lawful custody of any law enforcement official, or any person convicted and sentenced by any court and committed to any municipal or county jail or state prison, prison farm, or penitentiary, or to the custody of the department pursuant to lawful authority, as provided by law.
Section 2. This act shall take effect July 1, 2002.
Fla. S.B. 1636 (2002), available at http://www.flsenate.gov (emphasis added).
The bill states on the first line that it is "A bill to be entitled." The bill is saying on its face that the title to the Act is what comes next: the customary phrase "An act relating to" plus the rest of the title.
Under Article III, Section 7, Senate Bill 1636 was read by title as required. The Senate Journal stated:
By Senator Crist
SB 1636A bill to be entitled An act relating to corrections; amending s. 944.02, F.S.; redefining the term "prisoner" for purposes of the state corrections code; providing penalties; providing an effective date.
Fla. S. Jour. 168 (Reg.Sess.2002) (emphasis added); id. at 411, 463.
When the bill became law (after minor amendments), it was designated chapter 2002-32, Laws of Florida. At that point it was no longer a bill, but had become a legislative Act. The phrase "A bill to be entitled" was removed. It was published in the Laws of Florida as follows:
CHAPTER 2002-32
Senate Bill No. 1636
An act relating to corrections; amending s. 944.02, F.S.; redefining the term "prisoner" for purposes of the state corrections code; providing an effective date.
Be It Enacted by the Legislature of the State of Florida:
Section 1. Subsection (6) of section 944.02 Florida Statutes, is amended to read:
944.02 Definitions.The following words and phrases used in this chapter shall, unless the context clearly indicates otherwise, have the following meanings:

*1119 (6) "Prisoner" means any person who is under civil or criminal arrest and in the lawful custody of any law enforcement official, or any person convicted and sentenced by any court and committed to or detained in any municipal or county jail or state prison, prison farm, or penitentiary, or to the custody of the department pursuant to lawful authority, as provided by law.
Section 2. This act shall take effect July 1, 2002.
Ch.2002-32, Laws of Fla.
Proceeding through the steps of the single subject analysis:
1. Find the title. The title is the language which begins, "An act relating to."
2. Find the single subject. The single subject is the word or phrase which immediately follows "An act relating to." In this case, the single subject is "corrections."
3. Determine whether the stated single subject covers the contents of the Act. It does. The Act amends the definition of prisoner, which falls within the single subject of "corrections."

V.
The next step is to apply this analysis to the Act which is now before us, chapter 99-188, Laws of Florida. In this section, I will apply the analysis as I believe it should be, and postpone any consideration of Tormey v. Moore.
As introduced in the Legislature, chapter 99-188 originated as House Bill 121. After amendment it became Committee Substitute for House Bill 121. Its title was four pages long; it stated in part:
CS/HB 121A bill to be entitled An act relating to sentencing; creating the "Three-Strike Violent Felony Offender Act"; amending s. 775.082, F.S.; redefining the term "prison releasee reoffender"; revising legislative intent; ... providing an effective date.
Fla. H.R. Jour. 1028-29 (Reg.Sess.1999) (emphasis added) (second reading); id. at 1128-29 (third reading).
After it became law, the Act was designated chapter 99-188, Laws of Florida. The phrase "A bill to be entitled" was removed. As published in the Laws of Florida, the title states in part:
An act relating to sentencing; creating the "Three-Strike Violent Felony Offender Act"; amending s. 775.082, F.S.; redefining the term "prison releasee reoffender"; revising legislative intent; ... providing an effective date.
To perform the single subject analysis:
1. Find the title. It is the language beginning "An act relating to."
2. Find the single subject. The single subject is "sentencing."[1]
3. Determine whether the stated single subject covers the contents of the Act. Unfortunately, it does not.
The majority opinion accurately summarizes the contents of this lengthy piece of legislation, see majority opinion at 1113-1114 n. 2, which runs forty-five printed pages in the Laws of Florida. Sections 1-10 and Section 12 pertain to sentencing, and are thus within the single subject of the Act.
*1120 The defense argues that Section 9 does not fit within the subject of sentencing because it modifies the drug trafficking statute to allow a trafficking prosecution on the basis of the number of cannabis plants which a person possesses, sells, or delivers. Heretofore the statute provided for prosecution on the basis of weight, rather than the number plants. Section 9 also modifies the weight benchmarks for prosecution. The defense argues that this amounts to a change in the definition of the substantive crime of trafficking, and thus is outside the scope of the single subject of sentencing.
In my view, this argument should be rejected. The possession, sale, or delivery of cannabis in these amounts is already illegal. The modification of the weights, and the allowing of a prosecution on the basis of the number of plants, affects the penalty which can be assessed but does not, so far as I can determine, criminalize previously legal conduct. For these purposes the modifications are properly viewed as relating to the penaltywhich falls within the single subject of sentencing, or matter properly connected therewith. Fla. Const. Art. III, § 6.
It is next argued that Section 11 falls outside the single subject of sentencing. While this point is more debatable, ultimately Section 11 passes muster.
Section 11 of the Act provides that the court clerk shall provide to United States immigration officers the charging document, judgment, and sentence "in every case in which an alien is convicted of a felony or misdemeanor or enters a plea of guilty or nolo contendere to any felony or misdemeanor charge." Id. By its terms the statute requires that this be done after sentence has been imposed on the non-citizen.
The single subject rule states that "[e]very law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title." Fla. Const. Art. III, § 6 (emphasis added). Since the clerk is to notify the immigration authorities after completion of sentencing, this amendment is either within the single subject of sentencing, or is a "matter properly connected therewith." Id.
The defense is correct, however, in saying that there is a single subject problem with Section 13. Section 13 amends the definition of a conveyance in the burglary statute to include a railroad vehicle. This expands the substantive crime of burglary to include burglary of a railroad vehicle. Id.; see §§ 810.011(3), 810.02, Fla. Stat. (1999).
This is a change in substantive criminal law. It is not a matter which relates to sentencing. There is thus a single subject violation with respect to Section 13. I agree with the Second District's ultimate conclusion regarding Section 13. Taylor v. State, 818 So.2d at 549.
Because Section 13 is clearly outside the scope of the single subjectsentencingit follows that chapter 99-188 violates the single subject rule and must be held unconstitutional.[2]

VI.
If the foregoing analysis is accepted as correct, then there is a simple remedy under Tormey v. Moore, 824 So.2d 137 (Fla.2002).
The Tormey decision has made a positive contribution regarding the remedy for a single subject violation. The Tormey court said:

*1121 We agree with the parties that the proper remedy for this violation is to sever the part of the act that was not properly identified in the title. See Presbyterian Homes v. Wood, 297 So.2d 556, 559 (Fla.1974); see also Heggs v. State, 759 So.2d 620, 629 (Fla.2000) (reaffirming Wood rule). The rule set forth in Wood indicates:
An unconstitutional portion of a general law may be deleted and the remainder allowed to stand if the unconstitutional provision can be logically separated from the remaining valid provisions, that is, if the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void; and the good and bad features are not inseparable and the Legislature would have passed one without the other; and an act complete in itself remains after the invalid provisions are stricken.
824 So.2d at 142.
This reiterates the analysis that has prevailed since the early days of the single subject rule.[3] As the Florida Supreme Court said in an early case:
The fact that an act is broader than its title does not, however, render the whole act void. If, says Mr. Cooley, by striking from the act all that relates to the object not indicated by the title, that which is left is complete in itself, sensible, capable of being executed, and wholly independent of that which is rejected, it must be sustained as constitutional. Cooley, Const. Lim. 179.
State ex rel. Gonzalez v. Palmes, 23 Fla. 620, 3 So. 171, 176 (1887).
Applying that remedy in this case would allow us to sever Section 13 from chapter 99-188, and leave Sections 1-12 intact.
Unfortunately, there is another part to the Tormey decision which analyzes what a title is and what a single subject is. Since we are bound to follow Tormey, the analysis I have outlined here is not permissible in this particular case. The next section will consider Tormey.

VII.
In Tormey the court considered a single subject challenge to chapter 89-100, Laws of Florida. Chapter 89-100 was enacted by Committee Substitute for House Bill 25. Although not set forth in the opinion, the title to Committee Substitute for House Bill 25 was as follows:
CS/HB 25A bill to be entitled An act relating to criminal penalties; creating the "Law Enforcement Protection Act"; providing legislative findings and intent; creating s. 775.0823, F.S.; establishing mandatory minimum penalties for persons convicted of murder, manslaughter, kidnapping, aggravated battery, and aggravated assault of law enforcement officers, correctional officers, state attorneys, and assistant state attorneys; prohibiting provisional credits; amending s. 944.277, F.S.; prohibiting the granting of provisional credits to inmates convicted of committing certain offenses against law enforcement officers, correctional officers, state attorneys, and assistant state attorneys; providing an effective date.
Fla. H.R. Jour. 643 (1989) (emphasis added). Within the body of the Act, Section 1 stated, "This act may be cited as the `Law Enforcement Protection Act.'" Tormey, 824 So.2d at 140 n. 4.
In deciding what the single subject of the Act was, the court said:

*1122 The key to the resolution of this case is the true title of the act in question. As noted above, the Department asserts that the title to the act is "An act relating to criminal penalties." Indeed a portion of the title does include that phrase. Nevertheless, it is quite clear from a reading of the entire title that the Legislature intended and in fact named the act the "Law Enforcement Protection Act." While the beginning of the act indicates that it is "an act relating to criminal penalties," it then goes on to significantly narrow and restrict the types of criminal penalties addressed in the act. Thus, an honest reading of the title must result in the conclusion that this act is an act which provides for increased "criminal penalties" for persons who commit criminal offenses against law enforcement personnel and only law enforcement personnel. Further, the Legislature clearly restricted its intent to the protection of law enforcement personnel in the preamble to the act. The Legislature specifically found that since officers were constantly at risk and many had been assaulted or killed, it wished to increase the severity of the punishment for persons who commit violent offenses against law enforcement personnel and thereby discourage persons from committing such offenses against them. Consequently, the true subject of the act is enhanced penalties for persons who commit crimes against law enforcement personnel.
Id. at 140-41 (footnote omitted).
Respectfully, there is a mistake here. Instead of focusing on the legislatively-stated single subjectcriminal penalties the court ruled that where the Act contains a citation name ("This act may be cited as the `Law Enforcement Protection Act'"), the latter is controlling.
I respectfully urge the court to recede from this proposition. The single subject rule specifies that the statement of the single subject appear in the title, not in the body of the Act. The fact that in the body of the Act the Legislature created Section 1 to say that the Act may be cited as the Law Enforcement Protection Act is irrelevant from a single subject point of view. It should instead be made clear that the legislatively stated single subject is the word or phrase immediately following "An act relating to."

VIII.
While I believe that Tormey should be revisited, the fact remains that Tormey is binding upon us. Thus we must follow Tormey's analysis in deciding what the single subject is.
Once Tormey is applied to chapter 99-188, it becomes clear that almost all of chapter 99-188 must be struck down.
Under Tormey, we first examine the title to chapter 99-188, which states in part:
An act relating to sentencing; creating the "Three Strike Violent Felony Offender Act"; amending s. 775.082, F.S.; redefining the term "prison releasee reoffender"; revising legislative intent;... providing an effective date.
Ch. 99-188, Laws of Fla.
We next look to Section 1 of the Act which says, "This act may be cited as the `Three-Strike Violent Felony Offender Act.'" We then treat Section 1 as controlling. The subject is narrowed to become sentencing of Three-Strike Violent Felony Offenders. See Tormey, 824 So.2d at 140-41.
Portions of Section 3 of chapter 99-188 create a sentencing category called "Three-time violent felony offender" and provide for enhanced sentencing penalties. Id. (codified as § 775.084(1)(c), (3)(b), (4)(c), (k), Fla. Stat. (1999)). This falls *1123 within the Tormey-mandated single subject.
The rest of Section 3, and all of the other sections of chapter 99-188, deal with other issues. This means that all of chapter 99-188 violates the single subject rule, except the part of Section 3 which creates the classification of three-time violent felony offender.
It follows under Tormey that the portions of Section 3 which deal with three-time violent felony offenders are constitutional and are to be preserved intact. The entire remainder of chapter 99-188 must be struck down as violating the single subject rule.

IX.
The next question is what ruling to enter in this particular case. Defendant-appellee Corey Franklin had originally been sentenced as a habitual felony offender ("HO"), relying on amendments to the habitual offender statute contained in chapter 99-188. Upon defendant's timely motion to correct sentencing error, the trial court ruled that chapter 99-188 violated the single subject rule and was unconstitutional. The court determined that under the law as it stood prior to the enactment of chapter 99-188, the defendant did not qualify as a habitual offender. The trial court resentenced the defendant to a non-habitual sentence, and this case is now before us on the State's appeal.
As set forth in the previous section, the only part of chapter 99-188 which survives the single subject challenge is that part of Section 3 of chapter 99-188 which created the sentencing category of three-time violent felony offenders. The habitualization amendments relied on in sentencing this defendant fall outside of the provision dealing with three-time violent felony offenders, and thus the habitualization amendments enacted by chapter 99-188 are unconstitutional. The trial court was correct in granting the defendant's motion and resentencing him to a non-habitual offender sentence.
In the meantime, the 2002 Legislature reenacted the sentencing provisions of chapter 99-188 in several separate Acts. See ch.2002-208, Laws of Fla. (reenacting Sections 5 and 12 of chapter 99-188); ch.2002-209 (reenacting Sections 4 and 12 of chapter 99-188); ch.2002-210 (reenacting Sections 1, 3, 6, and 12 of chapter 99-188); ch.2002-211, Laws of Fla. (reenacting Sections 2, 7, 8, and 12 of chapter 99-188); ch.2002-212, Laws of Fla. (reenacting Section 9, 10, and 12 of chapter 99-188).[4]
Of interest here is chapter 2002-210, which reenacted Section 3. Section 3 contained the amendments to the habitual offender statute pursuant to which the State seeks to habitualize this defendant.
Chapter 2002-210 states that it is retroactive to the extent constitutionally permissible:
Section 3. Except as specifically provided otherwise in this act, the provisions reenacted by this act shall be applied retroactively to July 1, 1999, or as soon thereafter as the Constitution of the State of Florida and the Constitution of the United States may permit.

ch.2002-210, § 3, Laws of Fla. (emphasis in original). By the language it chose, the Legislature recognized that it may not be constitutional to give retroactive effect to those portions of Act which retroactively increase criminal penalties.
On this issue, I agree with the analysis of the Second District Court of Appeal in *1124 Green v. State, 28 Fla. L. Weekly D 343, ___ So.2d ___, 2003 WL 201345 (Fla. 2d DCA Jan. 31, 2003) (construing ch.2002-212, Laws of Fla.). The State is asking us to approve a retroactive increase in the penalty for a crime committed prior to the effective date of chapter 2002-210.[5] As explained in Green, this would violate the ex post facto clause of the United States Constitution.
It follows that the State appeal must be denied, and the defendant's non-habitual sentence should be affirmed.

X.
In footnote 4, the majority in this case proposes that enforcement of the single subject rule should be abandoned. Majority opinion at 1114-1115 n. 4. Saying that the current state of jurisprudence on the single subject rule is "perplexing," id. at 1113, the majority suggests that the single subject rule be treated as merely directory, and not subject to judicial enforcement. Id. at 1114-1115 n. 4. Footnote 4 makes an alternative suggestion that the courts engage in some sort of "harmless error" analysis by which the courts would second-guess whether a particular provision of an Act would, or would not, have passed the Legislature absent the single subject violation. The latter suggestion invites an inquiry into legislative deliberations which violates the doctrine of separation of powers, while the former abandons the constitutional provision entirely.
The majority has it wrong. The benefits of the single subject rule far outweigh the burdens. It is important for the public, press, and legislators to have fair notice regarding the subject matter of bills that are introduced in the Legislature. The rule helps assure that amendments are germane to the bill being amended, and helps prevent unfair surprise in the lawmaking process. Forty-one states have a single subject rule of some type, 1A Norman J. Singer, Statutes and Statutory Construction § 17:1, at 2 (6th ed.2002 revision), and Florida's provision has been in existence for 135 years. See note 3 supra. The single subject rule is clearly superior to the legislative method used in Congress, which has no germaneness requirement at all.
The majority says that the single subject rule affects only the legislators themselves, majority opinion at 1115 n. 4, but that is not so. The rule "attempts to avoid surprise or fraud by ensuring that both the public and the legislators receive fair and reasonable notice of the contents of a proposed act." In re Advisory Opinion to the Governor, 509 So.2d at 313 (emphasis added).
Legislative compliance with the single subject rule has, on the whole, been very good. For decades, the Legislature has drafted bills and published titles using the same format. This has accomplished fair disclosure in the vast majority of cases.
Looked at another way, several hundred Acts become law each year. Few enactments are ever challenged on single subject grounds, and the number which succeed are small indeed.
While I disagree with the majority's proposed cure, I agree with the majority's diagnosissingle subject jurisprudence is in need of clarification and simplification. Meaningful single subject adjudication is impossible as long as there is no common agreement on what the title to an Act is, and where to find the single subject.
In this opinion I have suggested the following rules and guideposts:
1. It is the Legislature's responsibility and prerogative to state what the title is, and what the single subject is.
*1125 2. The title is that part of an Act which begins "An Act relating to."
3. The single subject is the phrase immediately following "An Act relating to." This is sometimes referred to as the short title. Kaufman, 430 So.2d at 907.
4. The court's role in a single subject case is to (a) find the title, (b) find the single subject, and (c) determine whether the body of the Act falls within the stated single subject.
If this proposed method of analysis is followed, then there can be order and predictability in single subject adjudication.
NOTES
[1] Cf. Tormey v. Moore, 824 So.2d 137 (Fla.2002)(ascribing decisive effect to specified "title" of statute).
[2] The provisions of the Act may be described as follows:

Section 1 provides a name for the Act;
Section 2 amends certain portions of the Prison Releasee Reoffender Act;
Section 3 creates the `Three-strikes' law and redefines certain aspects of the Habitual Felony Offender Act;
Section 4 creates a minimum mandatory for assault and battery against certain public employees;
Section 5 creates a minimum mandatory for assault and battery against persons over the age of 65;
Section 6 modifies the language in section 790.235 to accommodate the changes made in adopting the `3-Strikes' law;
Section 7 creates the new offense of a `Repeat Sexual Batterer' and corresponding minimum mandatory;
Section 8 amends section 794.011 to accommodate the `Repeat Sexual batterer' offense;
Section 9 amends section 893.135 to require minimum mandatory sentences for trafficking in certain amounts of illegal drugs;
Section 10 conforms numerous statutes to the amendment made in Section 9;
Section 11 requires the clerk of the court to provide criminal records to United States immigration officers;
Section 12 requires the Governor to advise the public of the penalties set out in the Act; and,
Section 13 amends the definition of a conveyance in the burglary statute;
[3] The appellant also challenges the appropriateness of section 9, which increases the sentences for marijuana offenses. We have no difficulty in concluding that the legislature acted within its authority in determining that imposing harsher penalties for drug crimes is related to the occurrence of violent offenses in our community.
[4] Our confidence in the correctness of this result is strengthened by viewing the statute and its components in terms of the "common sense," Smith v. Department of Ins., 507 So.2d 1080, 1087 (Fla.1987), which, with respect, we find lacking in Taylor. We cannot overlook that the very basis of the single subject requirement is to prevent legislative "logrolling," Martinez v. Scanlan, 582 So.2d 1167, 1172 (Fla.1991); 1A Norman J. Singer, Statutes and Statutory Construction § 17.1, at 5 (6th ed.2002), that is, to preclude factions in the legislature from securing a majority for two disparate proposals which could not each succeed on its own. It does not require the extensive analysis of the political realities involved in the particular legislation in which several courts (although admittedly not yet the Supreme Court of Florida) have indulged, Ohio Roundtable v. Taft, 119 Ohio Misc.2d 49, 773 N.E.2d 1113 (Com.Pl.2002); Defenders of Wildlife v. Ventura, 632 N.W.2d 707 (Minn.Ct. App.2001), to conclude that it was hardly necessary, for example, for those favoring the habitual offender parts of the statute to attach it to the highly controversial proposal of expanding the definition of a railroad conveyance in order to get them passed. (Any doubt about this proposition is dissipated by the fact that, after Taylor, each of the significant portions of Chapter 99-188, including the cannabis section, see supra note 3, but without the immigration and railroad provisions, was reenacted unanimously in Chapters 02-208, 02-209, 02-210, 02-211, 02-212, Laws of Florida.)

Looking at it another way, the Supreme Court's observation in Thompson, 750 So.2d at 643, that the statute there was not severable because it was not possible to determine which of the differing subjects the legislature would have intended to survive, plainly has no application here. It is silly to suggest that the legislature would not have preferred to retain the three-strikes law and let the added protection of railroad equipment encompassed by section 13 gowhich is what it actually did in 2002. See Green v. State, ___ So.2d ___[, 2003 WL 201345] (Fla. 2d DCA Case no. 2D02-2430, opinion filed, January 31, 2003)[28 FLW D343](Altenbernd, J., concurring). See also Tormey, 824 So.2d at 142 (applying severability rule to sections beyond the "title" of the act).
By the same token, we see no principled reason why the general rule of harmlessness should not be applied to the present situation; that is, that a legislative "error" in attaching even an unrelated provision to an otherwise valid statute should not have any impact upon those, like this appellant, who are affected only by the valid ones. Similarly, persons like Franklin should be regarded as lacking constitutional "standing" to challenge the efficacy of sections like 9, 11, and 13, which have nothing to do with them. See 10 Fla. Jur.2d Constitutional Law § 73 at 431 (1997) ("Not only must a person be adversely affected by a statute in order to challenge its constitutionality but he also must be affected by the portion of the statute which he attacks. Thus, a person cannot raise an objection to part of a statute unless his rights are in some way injuriously affected thereby....").
Finally, the constitutional facts that Franklin has no right to the passage of legislation in any particular way, and that, to the contrary, the single subject provision affects only the legislators themselves, leads also to consideration of the suggestion that that clause is properly subject only to interpretation and enforcement by the legislature (which frequently engages in just this sort of self-regulation on the floor) and the governor in making his decision on whether to approve a particular bill, rather than the courts. Such a holding would vindicate the sound and often discussed but seldom applied principle that every branch of the government is responsible for the enforcement of pertinent provisions of the constitution. See Campbell v. White, 856 P.2d 255 (Okla.1993)(dissenting opinion); Alexander Bickel, The Least Dangerous Branch (2d ed.1988); Michael Stokes Paulsen, The Most Dangerous Branch: Executive Power to Say What The Law Is, 83 Geo. L.J. 217 (1994); Bonnie I. Robin-Vergeer, Disposing of The Red Herrings: A Defense of the Religious Freedom Restoration Act, 69 S.Cal.L.Rev. 589 (1996); John C. Yoo, Lawyers in Congress, 61 SPG Law & Contemp. Probs. 1 (1998).
[5] Our determination that Chapter 99-188 is valid makes it unnecessary to decide whether we agree with the holdings of the Fifth District in Lecorn v. State, 832 So.2d 818 (Fla. 5th DCA 2002); Carlson v. State, ___ So.2d ___[, 2002 WL 31202145] (Fla. 5th DCA Case no. 5D01-3089, opinion filed, October 4, 2002)[27 FLW D2162]; and Hersey v. State, 831 So.2d 679 (Fla. 5th DCA 2002), notice to invoke discretionary jurisdiction filed, No. SC02-2630 (Fla. Dec. 16, 2002), that the separate reenactment of the provisions of Chapter 99-188 in Chapter 02-210 applies retroactively, or with the directly contrary holding in Green v. State, ___ So.2d ___, 2003 WL 201345 (Fla. 2d DCA Case no. 2D02-2430, opinion filed, January 31, 2003)[28 FLW D343]. See supra note 4. We may say, however, that even before Green we had serious doubts about the Fifth District's conclusion that Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), which deals with only a change in procedure, supports this result. Those doubts have become even stronger after Green. See In re F.G., 318 Ill.App.3d 709, 252 Ill.Dec. 607, 743 N.E.2d 181 (2000)(holding, on identical issue, that statute "correcting" single subject violation not "retroactive," distinguishing Dobbert). See also Green, ___ So.2d at ___ [28 FLW at D346](Casanueva, J., concurring)(indicating that retroactive application of 02-212 would violate the ex post facto clause).
[1] The 2002 Legislature reiterated that the single subject of chapter 99-188 was sentencing. After the Second District Court of Appeal held that chapter 99-188 violated the single subject rule, Taylor v. State, 818 So.2d 544 (Fla. 2d DCA 2002), the 2002 Legislature "prepared five separate bills to reenact selected provisions of chapter 99-188, Laws of Florida, all of which relate to the single general issue of sentencing in criminal cases...." (Emphasis added). Ch.2002-208, at 1426, ch.2002-209, at 1428, ch.2002-210, at 1432, ch.2002-211, at 1444, and ch.2002-212, at 1454, Laws of Fla.
[2] Section 13 was not in the original version of House Bill 121. When Section 13 was added, the single subject "sentencing" was no longer adequate, and should have been amended to a broader title, such as "criminal justice."
[3] The single subject rule has been in force in Florida since 1868. Fla. Const. Art. IV, § 14 (1868); Fla. Const. Art. III, § 16 (1885); Fla. Const. Art. III, § 6 (1968).
[4] See note 1 supra. The Legislature in an abundance of caution reenacted all but Sections 11 and 13 of chapter 99-188.
[5] Chapter 2002-210 became law on April 29, 2002. Ch.2002-210, at 1442, Laws of Fla.