GROSS, J.
The state appeals Telly Lenard Andrews’s departure sentence imposed by the circuit court after a jury trial. Andrews cross-appeals his conviction for aggravated assault on a law enforcement officer. We affirm the conviction and reverse the sentence for the imposition of the mandatory minimum sentence required by statute, with appropriate credits for time served.
This was Andrews’s second trial. In his first trial, he was charged with attempted first degree murder of a law enforcement officer, fleeing and attempting to elude a police officer, and driving while license suspended. A jury found Andrews guilty of the lesser included offense of attempted second degree murder of a law enforcement officer and guilty as charged of the other offenses.
Andrews moved for a new trial on the attempted second degree murder and fleeing charges. The trial court granted a new trial only as to the attempted murder charge. After the state appealed and Andrews cross-appealed, this court affirmed. See State v. Andrews, 820 So.2d 1016 (Fla. 4th DCA 2002), disagreed with on other grounds by Santiago v. State, 29 Fla. L. Weekly D753 (Fla. 5th DCA Mar.26, 2004). The current appeal stems from Andrews’s new trial on attempted second degree murder.
Facts at the Second Trial[1]
Officer Ian MacVane testified that while patrolling as a passenger in Officer Russell Lichter’s police cruiser on January 6, 2000, he noticed a taillight out in Andrews’s car, a white Oldsmobile. MacVane told Lichter that they should pull the Oldsmobile over. After briefly following Andrews’s car, the officers pulled up alongside. Officer MacVane drew his gun and yelled for Andrews to pull over.
After indicating that he would pull over, Andrews sped off instead. The officers chased Andrews, lost the car for a short time, and ultimately found it in an alley. MacVane got out of the police car and told Lichter to drive around the block while he approached Andrews on foot. MacVane ran down the alley and saw Andrews’s Oldsmobile facing toward him with Andrews standing outside; the driver’s door was open and the engine was running.
When he was about ten feet away from the Oldsmobile, MacVane told Andrews to get away from the car. Instead, Andrews got back into his car, shifted into drive, and stepped on the gas.
Believing that Andrews would run him over, MacVane drew his gun and began shooting as Andrews drove. As he moved away from the car and observed it “floating at [him],” Officer MacVane continued to fire his gun.
In total, Officer MacVane fired seven shots at the Oldsmobile. Andrews was wounded by four bullets. A subsequent search of the car revealed a zip-lock bag of marijuana near the driver’s side door.
Eyewitness Tyra Drummer testified for the defense at the second trial.[2] Drummer stated that she observed Andrews’s car *689 going over a speed bump followed by a police car without its sirens and lights on. She knew Andrews through his girlfriend and recognized the car as his. Drummer ran down the street to see what was going on.
She saw the police car stop. MacVane jumped out and ran toward the alley with a gun in his right hand. Drummer did not hear Officer MacVane shouting anything as he ran toward Andrews’s car. However, she did hear seven shots fired. Drummer testified that at no time was Andrews’s car aimed at MacVane, nor did she see MacVane ever jump out of the way of Andrews’s car. After the Oldsmobile was out of the alley, Drummer saw Officer Lichter drive into the alley and pick up MacVane.
Both the state and Andrews introduced expert testimony concerning the angle at which Officer MacVane fired his shots.
For the state, crime scene reconstruc-tionist Greg Parkinson created diagrams which showed the trajectory patterns of each of MacVane’s bullets. Before the jury, Parkinson performed a demonstration with strings and Andrews’s car, which was located at the police station. Parkinson opined that Officer MacVane was in harm’s way when he fired the first shot at Andrews’s car and that the shot was fired from a twelve degree angle. Likewise, Parkinson believed there was a- “very real possibility” that MacVane was in harm’s way when he fired the second shot. However, when MacVane fired the remaining five shots, Parkinson testified that there was no threat of harm to Officer MacVane.
Andrews’s expert, Dennis McGuire, disagreed with Parkinson’s methodology. He thought that a laser beam would have provided greater accuracy than a string test. He also testified that Parkinson’s failure to use the bullet ricochet mark on Andrews’s car hood to determine an angle went against scientifically-accepted methods. McGuire opined that Officer MacVane could have been standing as far as eighteen to twenty feet away from Andrews’s car when he fired the first shot.

The Jury’s Verdict

The jury found Andrews guilty of the lesser-included offense of aggravated assault of a law enforcement officer with a motor vehicle, a deadly weapon. Andrews filed a post-trial motion for new trial, arrest of judgment, judgment notwithstanding the verdict, and renewed judgment of acquittal. The trial court denied Andrews’s motion, finding that there was competent substantial evidence to support a conviction for aggravated assault.

The Downward Departure Sentence

At Andrews’s sentencing hearing, the permissible range of sentence was from 29.175 months to fifteen years. The state requested the maximum sentence of fifteen years with a three-year mandatory minimum pursuant to section 784.07(2)(c), Florida Statutes (1999). Andrews argued for a downward departure and opposed the imposition of a mandatory minimum sentence.
The trial court downwardly departed by adjudicating Andrews guilty and sentencing him to time served. In a five-page sentencing order, the trial court explained its concerns:
The evidence is overwhelming that the initial attempted stop by Officers Lichter and MacVane was pretextual and, a classic example of profiling. The tail and tag lights on the Defendant’s vehicle were not defective. According to the videotape in evidence, those lights worked immediately after the stop. The officers’ testimony that the Defendant was stopped for the reason that his equipment was faulty is simply not credible.
*690 The brandishing of a firearm by Officer MacVane and “drawing down” on the Defendant at the very outset of the attempted stop was absolutely unnecessary and was a prelude to the outrageous behavior that Officer MacVane exhibited later that evening.
Although there is conflicting evidence as to the charge of Aggravated Assault on the police officer-and the jury as fact-finder resolved that issue — there is no dispute that the officer fired his weapon at the Defendant twice before the automobile passed the officer and five additional times after the automobile passed. Four of the officer’s bullets struck the Defendant. This incident took place in a residential neighborhood. Even if the fact-finder were to totally ignore the testimony of Tyra Drummond [sic], the eyewitness, and accept totally the testimony of Officer MacVane, that evidence would not justify Officer MacVane’s shooting at Defendant’s vehicle. A bullet will not stop an oncoming ear; it may disable it or the driver and cause the driver to lose control but the vehicle will continue moving. As an aside, it should be mentioned that later examination of Defendant’s vehicle revealed a child’s car seat and a child’s stuffed animal. The Defendant had four small children at the time of this incident. I shudder to think what tragedy might have resulted had Defendant’s vehicle been occupied by any of his children.
With regard to the marijuana which was located in Defendant’s impounded vehicle several days following the incident — in plain view — the evidence is strong that it was planted.
From all the evidence presented, the Court is persuaded that it was Officer MacVane and not the Defendant who was the aggressor that evening. It is evident to this Court that the Defendant fled the police officers that evening not because he had marijuana in his car-he fled because he feared for his life and had events played out as intended by Officer MacVane, there would have been no need for a trial; Telly Andrews would be dead. It is for that reason that this Court departs downward in its sentencing of the Defendant.
The state appeals the trial court’s downward departure sentence below the minimum mandatory sentence of three years required by section 784.07(2)(e). It contends that Chapter 99-188, the statute that added the mandatory minimum sentence language to section 784.07, does not violate the single subject rule and this court should follow the holding and rationale of State v. Franklin, 836 So.2d 1112 (Fla. 3d DCA) (en banc), review granted, 854 So.2d 659 (Fla.2003), rather than Taylor v. State, 818 So.2d 544 (Fla. 2d DCA), review dismissed, 821 So.2d 302 (Fla.2002).
During the pendency of this appeal, this court decided Hernandez-Molina v. State, 860 So.2d 483 (Fla. 4th DCA 2003), where we agreed with Franklin and certified conflict with Taylor,[3]
In Herandez-Molina, we addressed the constitutionality of Chapter 99-188, Laws of Florida. In Taylor, the second district found that Chapter 99-188 violated the single subject rule because two of the thirteen sections contained in Chapter 99- *691 188 were not logically connected with the other provisions. See Taylor, 818 So.2d at 549-50.
One year later, the third district held that Chapter 99-188 did not violate the single subject rule, in that each provision of the statute was related to the others and to the purpose of the act as a whole. See Franklin, 836 So.2d at 1113.
This court followed the reasoning of Franklin, and held:
After considering the presumption of constitutionality of a statute on single subject grounds, and that a statute should not be invalidated on single subject grounds unless its invalidity appears beyond a reasonable doubt, we agree with the third district’s analysis and conclude that the questioned provisions are sufficiently connected to the subject and effectuate the purpose of the legislation such that we cannot say it violates the single subject requirement beyond a reasonable doubt.
Hemandez-Molina^ 860' So.2d at 489 (emphasis in original) (citation omitted).
At the time Andrews was sentenced, the trial court was required to follow Taylor, because that was the only appellate opinion addressing the constitutional deficiency of the session law creating the mandatory minimum sentence of section 784.07(2)(c). In light of Hemandez-Molina, Andrews’s sentence must be vacated and the case remanded to the trial court for re-sentencing consistent with section 784.07(2)(c). See Heggs v. State, 759 So.2d 620, 630-31 (Fla.2000).

Andrews’s Cross-Appeal Failure to File Amended Information for Second Trial

Andrews argues on cross-appeal that the jury’s verdict should be reversed because the state failed to file an amended information prior to the commencement of the new trial. We hold that an amended information was not required.
In Fridovich v. State, 562 So.2d 328 (Fla.1990), the supreme court wrote thát it was unnecessary for the state to file an amended information under circumstances similar to this case.
In Fridovich, the defendant was charged with first degree murder, but was convicted of the lesser-included offense of manslaughter. Id. at 329. This court reversed the manslaughter conviction and remanded for a new trial. Id. Upon remand, the state re-filed an information which charged the defendant with the same crime as he was convicted of in the first trial. Id.
In discussing the legal effect of the state’s refiling of the information, the supreme court emphasized:
There is no rule or other authority which'requires the state to file a new information upon remand for a new trial in these circumstances. Pursuant to the mandate of the district court, the state need file only a motion to set the case for trial with the trial court. The trial judge is then obligated to instruct the jury on the crime with which the defendant is charged and to set forth the charge in accordance with Florida Standard Jury Instruction (Criminal) 1.01. The state is not required to file a new charging document setting forth the lesser included offense on which the defendant will be tried. There is no question that a new- charging document would be helpful to the state, the defendant, the judge, and the jury and that it would lessen the possibility of the jury’s knowing that the defendant was originally charged with first-degree murder. However, a new charging document was neither necessary nor jurisdictional in this case. The trial court had jurisdic *692 tion to try the offense of manslaughter without the refiled information and the state was not in any way changing the offense to be tried or abandoning the charge of manslaughter for this incident.
Id. (emphasis added).
The quoted language from Fridovich resolves Andrews’s first issue. At the first trial, Andrews was convicted of attempted second degree murder of a law enforcement officer with a motor vehicle, a deadly weapon, a lesser-included offense of attempted first degree murder. This court reversed the conviction and remanded for a new trial. Although the state proceeded without filing a new information, the trial went forward on the charge of attempted second degree murder. Under Fridovich, the state was not obligated to file a new information before Andrews’s new trial for attempted second degree murder.
Having been through the first trial and an appeal, Andrews was adequately on notice of the charge against him in the new trial. Moreover, the last information filed in the case contained the elements of aggravated assault, the charge of which Andrews was convicted.

The Marijuana Found in Andrews’s Car

Andrews next contends that it was error to admit the marijuana found in his car under the Williams[4] Rule; because it was hotly contested that the marijuana was planted, Andrews argues that the evidence was unfairly prejudicial.
The Williams Rule is codified at section 90.404(2)(a), and provides:
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
§ 90.404(2)(a), Fla. Stat. (2002). Where the purpose of introducing Williams Rule evidence is to prove motive, there is no requirement that the nature or facts surrounding the other crimes, wrongs, or acts be similar to the charged offense. See Finney v. State, 660 So.2d 674, 681-82 (Fla.1995). However, such evidence should not be admitted where its probative value is substantially outweighed by undue prejudice. See Hodges v. State, — So.2d -,-, 2003 WL 21402484, 28 Fla. L. Weekly S475, S480 (Fla. June 19, 2003). When Williams Rule evidence is admitted, “the court shall, if requested, charge the jury on the limited purpose for which the evidence is received and is to be considered.” Robertson v. State, 829 So.2d 901, 908 (Fla.2002).
In this case, Andrews timely renewed his motion to exclude evidence of marijuana found in his car several days after the car was impounded. The trial court reserved ruling on the issue so that it could see the context of how the state would utilize the evidence.
Richard Smith, a fingerprint examiner, testified that the car was searched three days after it was impounded. Inside the car, located in the driver’s door pocket area, was a zip-lock bag of marijuana.
The trial court admitted the evidence over objection and gave the jury the following Williams Rule instruction:
Exhibit Fifty Eight for the State, ladies and gentlemen, is a piece of evidence that may have to do with other crimes allegedly committed by the Defendant. But this piece of evidence, this green bag of marijuana, is not to be considered by you as evidence of other crimes be *693 cause he is charged with only one crime, and that is Attempted Second Degree Murder on a Law Enforcement Officer with the use of an automobile. But this evidence, Exhibit Fifty-Eight, is to be received by you for the limited purpose of proving motive on the part of the Defendant for any activities of the Defendant at the scene of this incident. And you shall consider this exhibit only as it relates to that issue of motive to leave the scene.
On cross-examination, Smith testified that although there were blood stains on the driver’s door and seat, he found no stains on the zip-lock bag of marijuana. Nor did Smith observe the zip-lock bag through the broken-out driver’s window on the night of the incident. Andrews’s fingerprints were not found on the zip-lock bag.
The sentencing order stated that the evidence was “strong that [the marijuana] was planted.” However, whether the marijuana was planted was an issue for the jury to consider in evaluating the probative value of the evidence. Andrews’s possession of marijuana was a conceivable motive for his attempt to evade the police officers. The trial court’s limiting instruction properly directed the jury’s attention to the probative value of the marijuana, if any. The trial court did not abuse its discretion in deciding that the probative value of the evidence was not substantially outweighed by any undue prejudice. See § 90.403, Fla. Stat. (2002); Couzo v. State, 830 So.2d 177, 181 (Fla. 4th DCA 2002).
On the remaining points on appeal, we find no error in the admission of the expert testimony and agree with the trial court that competent substantial evidence supported the aggravated assault charge.
The conviction is affirmed and the case is remanded to the circuit court for resen-tencing.
Affirmed in part, reversed in part, and remanded.
WARNER and KLEIN, JJ., concur.

. The facts elicited at the first trial are set forth in our earlier opinion, State v. Andrews, 820 So.2d 1016, 1018-21 (Fla. 4th DCA 2002).

. At the first trial, both the state and the defense called Drummer as a witness.

. Additionally, the first district is aligned with both this court and the third district, in holding that Chapter 99-188 does not violate the single-subject rule. See Watson v. State, 842 So.2d 275 (Fla. 1st DCA 2003). However, the fifth district has joined the second district in holding to the contrary. See Hersey v. State, 831 So.2d 679 (Fla. 5th DCA 2002), receded from on other grounds by Jones v. State, 872 So.2d 938 (Fla. 5th DCA Mar.26, 2004) (en banc).

. Williams v. State, 110 So.2d 654 (Fla.1959).